# Chamberlain & Parker *v.* Dorrance.

*Bill in Equity to have Bill of Sale set aside as Fraudulent and Void, and for a Discovery and Account.*

1. *Fraud; how pleaded.*—Fraud is a mere conclusion of law from facts stated and proved; and when it is pleaded, at law or in equity, the facts

[Chamberlain & Parker v. Dorrance.]

from which it is supposed to arise, must be clearly stated, in order that the court may determine whether they constitute fraud. A mere general charge of fraud, or a mere general averment, that an act was done with covinous intent, is not sufficient.

2. *Fraud; when it can not be imputed.*—When property is sold and conveyed by a debtor to one of his creditors, absolutely and unconditionally, in payment of a just debt, which exceeded in amount twice the value of the property so sold and conveyed, without reservation to the debtor of any right or interest in the property, or in the proceeds of its sale, neither fraud nor collusion can be imputed therefrom, nor can the other creditors of the debtor thereby suffer legal wrong or injury, although the debtor be then insolvent, which fact is known to the creditor, and the property so sold and conveyed is substantially all the property then owned by the debtor.

3. *Same.*—That a creditor, taking an absolute and unconditional transfer of a stock of goods in payment of his debt, only made a casual examination of the goods, did not make an inventory thereof until after the sale and a change of possession thereunder, and failed to execute a receipt or release to the debtor, are mere circumstances of suspicion, which are overcome by the fact, that there was an absolute and unconditional sale of the property in payment of a just debt.

4. *Settlement by trustee of debt due the trust.*—A settlement by a trustee of a debt due to him as such trustee, whereby he accepted a conveyance of property by the debtor, in payment of the debt, is, at most, only voidable, at the election of the *cestuis que trust.* This right of election is personal to them, and can not be exercised for them by other creditors of the debtor, who seek to set aside the conveyance, and to appropriate to themselves the property conveyed, to the exclusion of the debt, in which the *cestuis que trust* have the beneficial interest.

APPEAL from Mobile Chancery Court.

Heard before Hon JOHN A. FOSTER.

The bill in this cause was filed by Lise Dorrance, L. Brewer & Co., and others, creditors of Marsena A. Parker, against the said Parker, and John C. Chamberlain, individually, and as trustee of Carrie M. Parker and John B. Chamberlain, for the purpose of having a sale and transfer of goods, wares and merchandise and choses in action made by Parker to John C. Chamberlain, as such trustee, declared fraudulent and void, and for a discovery of the property thereby conveyed, and of the disposition made thereof, and for an account. The bill avers, that Marsena R. Parker, who was a wholesale and retail grocer, carrying on business in the Port of Mobile, was, on the 11th December, 1880, indebted to the complainants severally, by open accounts, itemized statements of which are made exhibits to the bill; and that, on that day, he was also largely indebted to other persons, was insolvent and in a failing condition, all of which was then well known to John C. Chamberlain; that Parker was then also largely indebted to Chamberlain as trustee, under the will of Lewis T. Woodruff, for Carrie M. Parker, a half sister of said Parker and a niece of John C. Chamberlain, and for John B. Chamberlain, son of John C. Chamberlain, for certain moneys belonging to said beneficiaries which were used

by Parker; but that the complainants "do not know the amount of such indebtedness, nor whether it was as large as the amount recited in the bill of sale from Parker to Chamberlain hereinafter mentioned;" that, in order to give the trustee an unfair and illegal preference in behalf of said debt over the complainants and his other creditors, Parker "on the date above mentioned pretended to sell to John C. Chamberlain, as trustee as aforesaid, all the property, effects and choses in action owned by him, and he, on that day, actually put said Chamberlain, trustee as aforesaid, in possession of every thing owned by him, and said Chamberlain has sold the property and collected the choses in action as far as he could, and converted every thing he so got from said Parker to his own use or to the use of said *cestuis que trust*;" that, "in order to disguise and conceal the true character of this unlawful and fraudulent purpose and transaction, said Parker and Chamberlain put the transaction and pretended sale in the form of a formal sale, and on the eleventh day of December, 1880, the better to embarass, hinder, delay and defraud your oratrix and orators, the said Parker, with and by the procurement of said Chamberlain, executed and delivered to the said Chamberlain a bill of sale, whereby he conveyed to him, as trustee as aforesaid, all his stock of goods," a description of which is set forth, "and all choses in action or evidences of debt belonging to him;" that the bill of sale "in fact covered every thing then owned by said Parker." A copy of this bill of sale is made an exhibit to the bill. It is also averred in the bill, that the consideration of the bill of sale, according to its recitals, was twenty-five thousand dollars, which was not paid in money, but, "on the contrary, it is pretended that this sum was to be paid by an absolute, unqualified credit of twenty-five thousand dollars on the debt of Parker to the minors, Carrie M. Parker and John B. Chamberlain, of whom John C. Chamberlain was trustee, no matter how small might ultimately be the proceeds from the property conveyed by said Parker as aforesaid, and if this was not accomplished, there was no consideration for the execution of said bill of sale. Without this fixed element of price for the things sold, there could be no sale, even if the transaction had been otherwise fair and otherwise free from defects in the elements, which constitute a *bona fide* sale, and which was not the case with this transaction, as will be hereinafter shown. But this fixed element of price did not exist in said sale. The debt was a trust debt due to minors. The trustee, Chamberlain, had no authority to release and discharge the debtor, Parker, from liability on the debt to said minors to the extent of twenty-five thousand dollars, because of the execution of said bill of sale and the delivery of the property therein described," and that it is optional with *

the minors to reject the agreement when they attained their majority. It is also averred in the bill, that said sum was a most exorbitant price for said goods and choses in action, arbitrarily fixed without any account of stock, appraisement or inventory thereof having been first taken; that no inventory thereof was made until after the bill of sale was executed, and Chamberlain had taken possession thereunder; that the goods and choses in actions were worth but little over half of said sum of twenty-five thousand dollars, if so much, and that Chamberlain had not realized any thing like that amount therefrom; that Chamberlain did not examine to ascertain what choses in action belonged to Parker, or what they were worth; that he made but a casual examination of the goods, and did not know, beyond the general description contained in the bill of sale, what property and choses in action were thereby conveyed; that such was the "hot haste," with which the matter was consummated, that Chamberlain did not in fact give Parker credit on that day for said sum of twenty-five thousand dollars, by any entry then made, nor did he give Parker any receipt for said sum, or any release therefrom; that a benefit would accrue to Parker from the alleged sale and transfer, if the same be allowed to stand, which he could never have obtained by a fair sale and assignment of said property and choses in action; that "in simple terms, said Chamberlain, well knowing that said Parker was unable to pay his creditors, was utterly insolvent and in a failing condition, undertook, by the pretended credit, to pay Parker a large *bonus* to prefer him, as trustee as aforesaid, over all his other creditors; to apply every thing in the world he owned exclusively to the payment of the debt due said Chamberlain, and in order to hinder, delay or defraud the other creditors of said Parker, to disguise the real transaction under the semblance and form of a sale, when no true and *bona fide* sale was made;" that complainants have no means of ascertaining and setting forth the merchandise and choses in action which went into the possession of Chamberlain under the bill of sale, or the value thereof, except by a discovery and statement of the same from and by said Chamberlain, and that "such a discovery and statement by him is necessary to fully appreciate all the circumstances attending said alleged sale of said Parker to said Chamberlain, and to the enforcement of the rights of your oratrix and orators."

The defendants, Parker and Chamberlain, demurred to the bill on the following, among other, grounds: 1. Because the bill charges, that the sale from Parker to Chamberlain, was made to hinder, delay and defraud the complainants and other creditors of said Parker as a legal conclusion of the pleader, but it does not deny, that the sale was based upon a valuable consid-

[Chamberlain & Parker v. Dorrance.]

eration. 2. Because, while the bill charges that the sale was made to hinder, delay and defraud the complainants and other creditors of Parker, it admits, that it was based on a good and valuable consideration, and was in discharge of an antecedent debt, due from Parker to Chamberlain as trustee.

The Chancery Court, upon the hearing of the cause on demurrer, rendered a decree overruling the demurrer; and this decree is here assigned as error.

OVERALL & BESTOR, for appellants. (1.) It is the settled law of this State, that an insolvent debtor has a right to convey his property to pay his creditor an antecedent debt, and thus prefer one creditor, although it may leave him with no means to pay others.—39 Ala. 60; 61 Ala. 134; 58 Ala. 628; 55 Ala. 282; 21 Penn. St. 495. (2.) If the consideration was alleged to be *inadequate*, other creditors would have a right to complain.—59 Ala. 296. But in this case, the appellees complain that the consideration is *greater* than the value of the property sold. Instead of this being a fraud on, or prejudicial to, the rights of other creditors, the logical result is, that it would operate for their benefit, as it would leave the debtor with less to pay, and in a better condition as to any other property that he might have, or afterwards acquire, with which he could pay or settle with his other creditors. (3.) The creditors can not complain of the release made by Chamberlain, trustee, to Parker. This is a matter between him and the *cestuis que trust*, to whom he is alone answerable. They have their remedy against him. 2 Perry on Trusts, § 482; 1 Perry on Trusts, § 185; 16 Ala. 418.

J. LITTLE SMITH, *contra.* (1.) It is admitted that a failing debtor may sell all his effects to one of his creditors in consideration of an antecedent debt; but he must do so by a fair and real *bona fide* contract of sale. The mere form of a sale will not suffice to protect a covinous and fraudulent transaction, the purpose of which is, that the debtor shall obtain a benefit or *bonus* for preferring the creditor, which he could not obtain by a fair and honest sale.—*Lehman, Durr & Co. v. Kelly*, in MS; *Borland v. Mayo*, 8 Ala. 104; *Thames & Co. v. Rembert*, 63 Ala. 567; *Young v. Dumas*, 30 Ala. 62; *Crawford v. Kirksey*, 55 Ala. 293; *Sims v. Gaines*, 64 Ala. 393; *Pickett v. Pipkin*, 64 Ala. 524. The fair price required in most of the cases is generally spoken of in regard to the *sufficiency* of the price, but that is simply because a fair price is one of the usual indicia of a fair intent. (2.) If a debtor sell his property with the intent or purpose of delaying, hindering or defrauding his creditors, such purpose stamps his conduct as fraudulent, even if he sell

VOL. LXIX.

[Chamberlain & Parker v. Dorrance.]

for full value; and the purchaser, though paying full value, acquires no valid title against the vendor's creditors, when he knows the vendor's fraudulent purpose in making the sale, or had knowledge of facts and circumstances naturally and justly calculated to awaken suspicion in the mind of a man of ordinary care and prudence, of the fraudulent purpose of the seller.. *Sims v. Gaines*, 64 Ala. 396; *Lehman, Durr & Co. v. Kelley Bro.*, in MS. (3.) No certain and irrevocably fixed price for the effects described in the bill of sale was insured to Parker by the agreement. Therefore, one of the essential attributes of a sale was wanting, and the legal effect of the arrangement was that Chamberlain might take the effects as a security for the debt, and apply the proceeds as a credit *pro tanto* on it. And the disguise of this illegal intent under the form of a sale, shows an actual fraudulent intent. There was no certain, fixed price, because neither any successor in the trust nor the beneficiaries are bound by the alleged sale, and they might hereafter disaffirm the arrangement between Chamberlain and Parker, and have the same set aside on the ground that such a contract was beyond the powers of the trustee, and unauthorized.— *Wiswall v. Stewart*, 32 Ala. 435; *Royall v. McKenzie*, 25 Ala. 363; Hill on Trustees, pp. 536 and 382–503, N. 2; *Jackson v. Walsh*, 14 Johnson, 407; W. & Tud. L. Cases in Eq. p. 53. It is no answer to say, that there was danger of losing the trust funds, because the trustee, under the facts, was bound to make good the loss.— *Clough v. Bond*, 3 Mil'n & Craig, 495; *Harrison v. Mock*, 10 Ala. 193.

BRICKELL, C. J.—The present bill, filed by the appellees, creditors of the appellant, Parker, seeks to compel the appellant, Chamberlain, to discover and account for goods, merchandise and choses in action, it is averred, were sold and transferred to him by Parker, with the intent to delay, hinder and defraud his creditors. A mere general charge of fraud—a mere general averment that the sale and transfer were made with covinous intent is not sufficient. Fraud is a conclusion of law from facts stated and proved; and when it is pleaded at law or in equity, the facts from which it is supposed to arise must be clearly stated, that the court may determine whether they constitute fraud.—*Flewellen v. Crane*, 58 Ala. 627; *Clay v. Dennis*, 3 Ala. 375.

There are several facts and circumstances stated in this bill, to support the general charge of fraud. The first is, that the debt in payment of which the sale and transfer were made, exceeded in amount twice the value of the goods and choses in action. The validity of the debt is not controverted. There is no averment that it was not fair and just in all respects. On

[Chamberlain & Parker v. Dorrance.]

the contrary, the averment is, that its consideration was trust funds belonging to minors, which Chamberlain, as trustee, had loaned to Parker. Assuming the charge to be true, as it is admitted by the demurrer, we can not perceive of what injury the fact is to the creditors of Parker. If he had sold for an inadequate consideration—for less than the real value of the property, of the inadequacy of the consideration, if it was gross, they could have justly complained. But that the debtor obtains more than the value of his property—more, as it is averred, than a prudent man would have paid for it, when the purpose is to pay a just debt, it is plain, can not be of injury to them. It may prove rather of benefit, for it removes the debt, and leaves the future acquisitions of the debtor open to their demands, to its exclusion. Or, the payment in money of a price exceeding the value of the property, which the debtor could more easily conceal than the property, thereby hindering and delaying his creditors, might be a circumstance of suspicion exciting a jealous scrutiny of the transaction. But when the property is taken in payment of a debt, that, from motives of generosity, or to procure a preference from a failing debtor, the creditor relinquishes largely more of his debt than the value of the property, can not be matter of which other creditors can complain. If Chamberlain had taken ten thousand dollars in money for his debt of twenty-five thousand dollars from Parker, the appellees would scarcely have supposed they had any cause of complaint. There is no difference, that instead of money he has taken property; there is no more cause for complaint in the one case than in the other. The preference of Chamberlain, by an unconditional sale to him, was a legal right Parker could exercise. And if it be exercised, the purpose being the payment of a just debt, without the reservation to himself of any right or interest in and to the property sold, or in the proceeds of its sale—if the sale is absolute, and from it neither he nor any personal object of his bounty, is to derive benefit, other than the benefit he derived from the payment of the debt, there can be of it no well-founded legal complaint. By a sale to a stranger, he could have converted the property into money, and have paid it to Chamberlain, compounding or discounting the debt on such terms as they deemed proper. Because of the disproportion between the amount of the debt relinquished and the value of the goods and choses in action, there can be no presumption that there was a secret trust, an undisclosed reservation for the benefit of Parker. Of such trust or reservation there is no positive averment in the bill. It is deduced as matter of inference only, because of the disparity in the price paid and the value of the goods; because of the excess of the price paid in the debt of an insolvent man, and the value of the goods, computing each in dollars.

[Chamberlain & Parker v. Dorrance.]

Fraud can not be imputed from facts and circumstances which may consist with pure intentions; and it would be rather a strained inference, to infer it from an injudicious settlement a creditor may make with a failing and insolvent debtor.—*Steele v. Kinkle*, 3 Ala. 352.

Whether Chamberlain as trustee had authority to compound the debt by taking the property at an excessive value, and whether the *cestuis que trust* have the right to repudiate the transaction, can not be important inquiries in this controversy.

There is no fact averred from which the want of authority can be inferred. All trustees having authority to loan, or to invest trust funds, have a corresponding authority to collect them, and in the collection may exercise the same powers of compounding and discharging they could exercise, if they were clothed with the beneficial interest as well as the legal title. *Waring v. Lewis*, 53 Ala. 615; *Foscue v. Lyon*, 55 Ala. 440; *Baldwin v. Hatchett*, 56 Ala. 461. If the dealing between him and the debtor, within the line of his authority, is free from all intent and purpose, common to both, to defraud the *cestuis que trust*, in consequence of his injudiciousness it can not be disturbed.— *Waring v. Lewis, supra*. Or, if it were shown the original loan of trust funds to Parker was a *devastavit*, the right of Chamberlain to retain them would not be affected, and rightfully he could compound or discharge the debt, thereby indemnifying himself on such terms as he deemed proper, in view of the failing condition of the debtor.—*Tomkies v. Reynolds*, 17 Ala. 109.

But of what interest it can be to other creditors of Parker, whether the *cestuis que trust* could repudiate the transaction, it is difficult to perceive. At most, the transaction is voidable only, not void.—*Charles v. Dubose*, 29 Ala. 367. Until the *cestuis que trust* manifest an election to avoid it, for all purposes it is valid according to the intention of the parties. The right of election is personal to the *cestuis que trust*, and can not be exercised for them by the appellees for the purpose of appropriating to themselves all the property of the debtor to the exclusion of the debt in which the *cestuis que trust* have the beneficial interest.

The facts attending the transaction—the fact that Chamberlain made but a casual examination of the goods and choses in action; that no inventory of them was taken until after the sale and the change of possession, or that receipts or releases were not given Parker, must all yield as circumstances of suspicion, in the presence of the admitted fact, that for a full price there was an absolute, unconditional sale of the property in payment of a just debt. They indicate only the anxiety, and, it may be impatience, of a diligent, vigilant creditor to obtain all

[Lehman v. Levy.]

that he could from the wrecked fortunes of a failing debtor, which was a legal and moral right. When property is taken by a creditor at its full value in payment of a just debt, taken absolutely and unconditionally, there can not be fraud or collusion, nor can there be legal wrong or injury to the other creditors of the debtor.—Bump on Fraud. Con. 221; *Clemens v. Davis*, 7 Penn. St. 263; *Crawford v. Cresswell*, 55 Ala. 497. There being no liens on the property, the debtor has the right to sell, and the creditor has the right to purchase. The price is matter of agreement between them; if it be not inadequate, and the debtor divests himself of the property absolutely and unconditionally, he can exact all of his debt the creditor may covenant to surrender.

The facts specially stated in support of the general averment of fraud, do not, in contemplation of law, constitute fraud, and do not support the averment. The demurrer ought to have been sustained; and a decree will be here rendered, reversing the decree of the chancellor, sustaining the demurrer and remanding the cause, that the bill may be dismissed, unless by proper amendment a case of equitable cognizance is presented.