# Moog v. Farley.

*Bill in Equity by Creditors to set aside Conveyances as Fraud-ulent.*

1. *Revision of chancellor's decision on question of fact.*—To justify a reversal of the chancellor's decision on a question of fact, the evidence must clearly show that his conclusion is erroneous.

2. *Proof of fraud.*—Under a bill by creditors attacking conveyances of his property by their debtor on the ground of fraud, fraudulent practices by the debtor in prior transactions with other persons, and declarations made by him subsequent to the execution of the conveyances, are not competent evidence against the grantees.

3. *Conveyance in name of third person; burden of proof as to ownership of money paid.*—Property purchased by a debtor, and paid for with his money, is liable to the satisfaction of his debts, though the title be taken in the name of another person; but the burden of proving these facts is on the attacking creditor, and, if he fails to prove that the money paid belonged to his debtor, the source from which it was derived, or its real ownership, is immaterial.

4. *Transactions between relatives.*—A transaction between relatives will be more closely scrutinized by the courts, at the instance of creditors, than a transaction between strangers; yet relationship is not, of itself, sufficient to stamp a transaction as fraudulent; and a *bona fide* creditor, closely allied to his insolvent debtor, may take property at a fair price in payment of his debt, as any other creditor might.

5. *Burden of proof as to consideration, and as to fraudulent intent.* When the attacking creditor has proved the existence of his debt at the time of the sale and conveyance, the *onus* is cast on the grantee or purchaser to show the payment of a valuable and adequate consideration; and such payment being shown, the question of intent becomes material; as to which the *onus* is shifted to the complainant, and he must show a fraudulent intent on the part of his debtor, and the grantee's knowledge thereof or participation.

6. *Purchase of property of insolvent debtor, by his brother.*—The insolvent debtor being indebted to his brother for borrowed money, and being unable to pay it on demand, in order that it might be invested in real estate, may lawfully convey property, at its fair value, in payment of the debt; and if the value of the property is greater than the amount of the debt, and the difference is paid to the debtor in money, and is used by him in the payment of other debts, the transaction will be sustained against creditors, when it is not shown that the grantee had knowledge of the debtor's pecuniary condition; though, in the absence of evidence as to such application of the money, or if notice had been brought home to the grantee of the debtor's intention thus to prefer creditors, the court would be inclined to hold the sale fraudulent as against the creditors not paid.

7. *Conveyance sustained, when equity would have compelled it.*—Where the debtor, being indebted to his brother for services as his clerk, bought a tract of land for him, at his instance, but took the title in his own name, afterwards promising to execute a proper conveyance, but failing to do so for several years, during which time the brother occupied, cultivated and improved the land; *held,* that a conveyance

[Moog v. Farley.]

executed after the lapse of four years, when the debtor had become insolvent, would be regarded as the voluntary performance of an act which a court of equity would have compelled, and the transaction would be sustained.

8. *Conveyance of stock of goods by insolvent debtor to his brother, in consideration of services rendered as clerk.*—In this case, an insolvent debtor having conveyed to his brother a stock of goods valued at $6,000, but not worth so much, in payment of a recited debt of $8,000; the transaction was sustained against the attack of creditors, affirming the chancellor's decree, on proof that the grantee had acted as clerk and salesman in the store of the grantor, for fifteen years; that it was agreed his compensation should be reasonable, but no amount was stipulated; that no account was kept with him on the books; that he was an unmarried man, was economical, and boarded in the family of the grantor; that he had been promised an interest in the business as a partner; that no former settlements were ever made, though often demanded by him, and often promised; and that no memorandum was kept of the settlement at which $8,000 was agreed on as the amount of the indebtedness.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 12th July, 1884, by Bernard Moog individually, and as the surviving partner of the late firm of A. & B. Moog, claiming to be a creditor of Owen Farley, against the said Owen Farley and his two brothers, Bryant and John E. Farley; and sought to set aside, on the ground of fraud, several conveyances of property to said Bryant and John E. Farley, and to subject the property to the satisfaction of the complainant's debt against said Owen Farley. The conveyances, copies of which were made exhibits to the bill, were four in number: 1st, a conveyance of said Owen Farley's entire stock of groceries to John E. Farley, which was dated January 10th, 1884, and recited a consideration of $6,000 paid, part of a larger indebtedness; 2d, a conveyance of certain real estate by said Owen to Bryant Farley, which was also dated the 10th January, 1884, and recited the payment of $2,700 as its consideration; 3d, a conveyance of certain real estate by said Owen to John E. Farley, which was dated the 6th November, 1883, but was not filed for record until the 11th January, 1884, and which recited the payment of $100 as its consideration; and, 4th, a conveyance of certain real estate by John F. Williams to said John E. Farley, which was dated March 8th, 1884, and recited the payment of $3,750 as its consideration. As to the conveyance last mentioned, the bill sought to subject the property to the satisfaction of the complainant's debt, on the ground that the purchase was made for the benefit of said Owen Farley, and the purchase-money paid by him; and as to the others, on the ground that the property was conveyed by said Owen in fraud of his creditors, he being then insolvent, that the recited considerations were

[Moog v. Farley.]

fictitious and simulated, and that the grantees knowingly participated in the fraud of said Owen. The complainant's debt was evidenced by several promissory notes which said Owen Farley had executed to A. & B. Moog, or on which they had become accommodation indorsers for him, dated and maturing on different days between October, 1883, and January, 1884, aggregating about $3,000; and it was alleged that he owed other debts, and that the said conveyances, with others not attacked in this suit, conveyed all of his property. Answers were filed by each of the defendants, denying the charges of fraud, and asserting the validity of the several conveyances; stating also, in answer to interrogatories, the particular consideration of each, and Bryant and John E. Farley each denying their knowledge of the insolvency of said Owen. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

G. L. SMITH, for appellant.—The conveyances sought to be set aside were made by an insolvent debtor to his two brothers, and conveyed substantially all of his property; and one of these brothers had, for fifteen years, had the entire management and control of the grantor's store, if indeed he was not a partner. The existence of the complainant's debt at the time these conveyances were executed being shown, the *onus* was on the grantees to prove the *bona fides* of the recited considerations, and to explain all the badges of fraud.—*Pickett v. Pipkin*, 64 Ala. 524; *Harrell v. Whitman*, 61 Ala. 278; *Hubbard v. Allen*, 59 Ala. 296. The evidence clearly establishes a deliberate scheme on the part of Owen Farley, he being insolvent, to hinder, delay and defraud his creditors, by disposing of his property, and putting it beyond their reach; and the material question is, whether his two brothers did not know his condition, and knowingly aid in the consummation of his plans.

(1.) *As to the conveyance of the stock of goods*, the attempted explanation of the parties is wholly improbable, and insufficient. The conduct of the parties, during their long business connection, is more reconcilable with the existence of a partnership between the two brothers, than with the theory of an agency, or clerkship. The name of John E. Farley no where appears on the books; no account was kept with or against him; no itemized account was ever made out between them, and they admit that, at the time of the alleged settlement, they did not know exactly how the account stood between them. This is not sufficient to sustain the settlement, as the consideration of the sale.—*Hamilton v. Blackwell*, 60 Ala. 547; *Hubbard v. Allen*, 59 Ala. 300; *Donegan v. Davis*, 66 Ala. 365; 8 Dana,

[Moog v. Farley.]

103; 13 Wisc. 283; 84 Penn. St. 253; Freem. Ch. 435.   In
the purchase of some of these goods by Owen Farley, when he
was insolvent, he perpetrated a fraud on the vendors; and
John E. Farley, having knowledge of these facts, actively par-
ticipated in the fraud; and therefore, his purchase being
fraudulent as to a part of the property, the entire transaction
is fraudulent and void.—*Tatum v. Hunter & Thomas*, 14 Ala.
557; *Wiley, Banks & Co. v. Knight*, 27 Ala. 349; *Gordon,
Rankin & Co. v. Tweedy*, 71 Ala. 213.

(2.)   *As to the lands purchased from Mrs. Thompson:*   The
consideration recited in the deed from Owen to John E. is
$100, while the evidence shows that the property was worth
$475; and the deed was not put upon record for several
months, and not until Owen had disposed of the rest of his
property.   On these facts, the sale was for a grossly inadequate
price, and therefore void as to creditors.   In avoidance of this,
it is said by John E. that his brother bought the property for
him, and charged him in his account with $475 as the price
paid; that he did not read the deed, did not know the consid-
eration recited, and failed to record it from mere oversight.
But there is no contemporaneous evidence as to the charge in
the account, and the parties testify that no account was kept
between them; and a party will not be heard to say that he did
not read a deed.—*Goetter, Weil & Co. v. Pickett*, 61 Ala. 387.
As to the purchase of adjoining lands by John E., the question
arises, Where did he get the money to pay for it?   It could
not have been paid for out of the $15 per month, his only
source of revenue from the store, for which he claims to have
accounted on settlement with Owen; it could not have been
borrowed from his mother, who had no money to lend; and it
would be strange for him to be borrowing money from his
mother, when his brother, solvent as he believed, owed him
$8,000.   If the purchase-money was paid by John E. with his
own funds, it must have been with moneys which he drew from
the business, or on account of his wages as clerk; and this
contradicts his story as to the consideration paid for the stock
of goods.

(3.)   The same suggestions apply to the purchase of the
property on Government street.

(4.)   *As to the sale to Bryant Farley:*   It is certain that
$135 was paid by Bryant to Owen Farley after the 11th Jan-
uary, when Bryant knew that Owen had sold out all his
property; and for this sum, at least, Bryant is liable to the
complainants.   It is certain, too, that on the 8th January, when
Bryant paid Owen $1,300, he was charged with knowledge of
facts which, if followed up, would have led to the discovery of
Owen's insolvent condition and fraudulent intent.   Nor is it

shown that this money was used by Owen in the payment of honest debts.

OVERALL & BESTOR, *contra*, submitted a printed· argument, in which they analyzed the evidence as to each of the transactions assailed by the bill, insisting that each was supported by a sufficient consideration ; and cited the following` authorities : Bump on Fraud. Conveyances, 221-23 ; *Dewey v. Littlejohn*, 2 Ired. Eq. 495 ; *Chamberlain v. Dorrance*, 69 Ala. 40 ; *Hubbard v. Allen*, 59 Ala. 301 ; *Bradley & Co. v. Ragsdale*, 64 Ala. 558 ; *Eskridge v. Abrams*, 61 Ala. 134 ; *Clements v. Moore*, 6 Wallace, 312 ; *Levy v. Williams*, at last term, *ante*, 171 ; *Warren & Burch v. Jones*, 68 Ala. 449.

CLOPTON, J.—The record only presents for revision the decisions of the chancellor on questions of fact ; and in considering them, we shall observe the settled practice, that to authorize a reversal in such case the evidence must clearly show that his conclusions are erroneous. In the investigation, the assignments of error founded on the rulings or objections to testimony, not insisted on in the argument, will be treated as waived. We shall also dismiss from consideration, other than as they may be regarded as affecting the credibility of Owen Farley as a witness, his alleged fraudulent practices, by misrepresentations or otherwise, to induce strangers to this suit to become indorsers on his paper, or to obtain other favors, which do not consist of fraudulent dispositions of his property, are prior to the transactions in controversy, and of which it is not shown the other defendants had any knowledge, or participated therein ; and his declarations, made after the execution of the conveyances attacked, will not be regarded for the purpose of impeaching them.

One of the purposes of the bill is, to subject to complainant's demands the lots on the south side of Government street in Mobile. These lots were purchased from John F. Williams, in March, about two months after the open failure of Owen Farley, and the deed was executed to John E. Farley. There is no pretense that the property was, at a time anterior to the purchase, owned by Owen Farley. Its condemnation is sought, on the claim that the purchase-money was ·furnished by him, and that it was bought for his benefit. If such be the fact, it is liable to complainant's debt ; but, under the circumstances, the burden of establishing this fact is on complainant. The uncontradicted evidence of several witnesses shows, that the negotiations for the purchase were carried on by John E. Farley, who stated, at the time, that he was using the money of his mother, and was purchasing. the property for her ; but

[Moog v. Farley.]

that, by her consent, the conveyance was to be made to him, to aid him in carrying on his business, to which he also testifies as facts. Because of some defect in the certificate of acknowledgment, the deed was sent back to St. Louis to be perfected. In the meantime, a part of the money was left with his attorney, and the balance was deposited in a banking-house in Mobile. On the return and delivery of the deed, the property was paid for with the check of the attorney for the amount left with him, and the check of John E. Farley for the amount deposited in bank. Much of the money consisted of fractional · currency, was musty, and had the appearance of having been withdrawn from circulation and kept for some time. It is unreasonable to suppose that Owen Farley, who had been engaged in mercantile business for fifteen years preceding, in carrying on which he constantly needed money, and when he was keeping deposit accounts with one or more banks, would have withdrawn that amount from his business, and hoarded and kept it in some private place unemployed. The argument is the insufficiency of the proof to show that the mother had money, or the means of acquiring it; and it is insisted that therefore we should presume it was the money of either Owen Farley or of John E. Farley. In the absence of evidence showing it was Owen's money, and against the opposing testimony of witnesses, we are not authorized to presume the fact. To justify a presumption of fraud, circumstances must be proved on which to found the inference. Unless the purchase was made with his money, his creditors are not injured, and have no right to complain. It matters not to them from what other source, or in what other manner, the mother acquired the money. Her removal into the house as a residence, and the occupancy of the lower story by John E. Farley as a store, tend to corroborate his statements, and indicate the purposes for which the property was purchased. And, when the complainant offers no evidence to show that the money used was the debtor's, the burden of proof being cast on him, it will be presumed, for the purposes of this case, that the money was not his.—*Lehman Bros. v. McQueen.* 65 Ala. 570.

The bill further assails as fraudulent a conveyance of other lots in Mobile to Bryant Farley, and conveyances of land and a stock of goods to John E. Farley. A circumstance applicable to all the transactions is relationship, the parties being brothers. While the earlier cases class relationship among the badges of fraud; the later and better opinion is, that it is a circumstance to be considered and weighed in connection with the other circumstances of the transaction. What are denominated badges of fraud, do not conclusively establish it. They

are evidence of a fraudulent intent, which may be rebutted and explained, but from which, if unexplained, fraud may be, and sometimes should be inferred. The explanatory proof must be clear and satisfactory—more convincing than the evidence of the badge of fraud, as drawn from general observation and experience. A transaction between relatives will be more zealously scrutinized, than if between strangers; yet relationship is not sufficient, of itself, to mark a transaction as fraudulent; and "a *bona fide* creditor, though he be closely allied to his debtor, and the latter insolvent, may take property, at a fair price, in payment of his debt, and his title will be unassailable."—*Hubbard v. Allen*, 59 Ala. 283; *Bradley v. Ragsdale*, 64 Ala. 558. When the creditor proves the existence of his debt at the time of the sale, the *onus* is then cast on the purchaser to show the payment of an adequate and valuable consideration. Upon payment of such consideration being shown, an inquiry as to the intent becomes material, in respect to which the burden is shifted on the complaining creditor, the payment of a valuable and adequate consideration repelling the presumption of fraud, that would otherwise arise.

In respect to the transaction with Bryant Farley, the evidence shows that, in June, 1883, he loaned Owen twelve hundred dollars, for which the latter gave a due-bill. About January 8, 1884, he called on Owen for payment of the due-bill, stating to him that he desired to purchase real estate, such investment being more profitable than loaning his money or keeping it in a savings-bank. It is shown by his bank-book that he then had over seventeen hundred dollars on deposit in the savings-bank. Owen was unable to pay him, and proposed to sell him city property. After some negotiation as to the price, he purchased the lots in controversy, at twenty-seven hundred dollars, and paid him on the same day the due-bill and about thirteen hundred dollars in cash, as Owen said he needed some money; and the balance of the purchase-money two or three days afterwards, when the deed was delivered. The cashier of the bank testifies, that Bryant had the amount mentioned on deposit, and to his having drawn it out on that day. His ability to purchase is made apparent, and the payment of a valuable and adequate consideration is sufficiently proved. It thus was incumbent on the complainant to show, not only the fraudulent intent of Owen, but also Bryant's knowledge of such intent, or his participation therein. It is not shown that he had any actual knowledge of his brother's financial embarrassment, or of any indebtedness, other than the amount due him. It may be conceded, that their relationship, the customary way of carrying on such mercantile business, and the information which he received from his brother of his inability

to pay, and his need of money, were sufficient to put him on inquiry. If there was an absence of evidence as to the application of the money paid, or if notice had been brought home to Bryant of the intention of his brother to prefer creditors in the future, we would be inclined to hold the sale fraudulent as against unpreferred creditors, on the authority of *Lehman, Durr & Co. v. Kelly*, 68 Ala. 192. But it is shown that the money was applied to the payment of debts, and there is no evidence that Bryant had any notice, or reason, to suspect any necessity to prefer creditors, or his brother's inability to pay his indebtedness in full. He was regarded in the business community as solvent, up to the day of his failure.

It is insisted that the application of the money is only proved by Owen Farley. In answer to an interrogatory, he gives the names of the creditors whose debts were paid, one of them being a note on which complainant's firm was an indorser ; and thus furnishes the names of witnesses, by whom the alleged payments could be disproved, if his testimony was false.—*Eskridge v. Abrahams*, 61 Ala. 134. Such testimony, uncontradicted after means and opportunity afforded, produces a reasonable conviction that the money was applied to the extinguishment of debts justly due ; and such application is inconsistent with participation by Bryant in an intent to defraud creditors. Where the proceeds of sale have not been diverted from the payment of debts, but have been honestly applied to the liabilities of the debtor, the transaction will not be pronounced fraudulent. When the property is thus appropriated, other creditors can not complain.—*Clements v. Moore*, 6 Wall. 299.

The land on the Bay shell-road was purchased by Owen from Mrs. Thompson, in 1879. Owen and John both testify, that the purchase was made at the instance, and for the benefit of John, and that the amount of the purchase-money was paid by a credit on Owen's indebtedness to John for his services as clerk. The deed was taken in his own name ; on discovering which, John called on him for a deed ; which Owen promised to execute, but postponed it from time to time, until November, 1883, when the deed in question was made, and acknowledged before a qualified officer on the day of its execution. It appears from their own, and the testimony of other witnesses, that John went into possession in 1879, soon after the purchase, improved the place, planted orange and pecan trees, which he purchased the same year, has occupied and cultivated it ever since, sold several hundred dollars worth of wood therefrom, and has enlarged it by purchases of adjoining lands. If it had been a sale of the land in November, 1883, the consideration recited would have been a material circumstance to be

[Moog v. Farley.]

considered; but, as it was not a sale—only the consummation of what ought to have been done several years previously—its materiality is destroyed, and it is not sufficient to stamp the conveyance as fraudulent. On the evidence, we are forced to the conclusion, that John was the beneficial owner of the land before the debt of the complainant was contracted, and that Owen, in conveying it to him, only did what a court of equity, under the circumstances, would have compelled him to do.

The character of the sale and transfer of the stock of goods to John E. Farley must be determined on other principles, to some extent. We have found great difficulty in attaining a satisfactory conclusion as to this transaction. As growing out of the right of a debtor to prefer his creditors, we have held, in several late cases, that an absolute sale of his property by a debtor, though insolvent, to a creditor, in payment of an antecedent debt honestly due, the amount of the indebtedness being commensurate with the value of the property, and no benefit reserved to the debtor, will be maintained, though the debtor may have been moved by a fraudulent intent, and provided the creditor does no more than is necessary to procure the payment of his debt. In such case, the creditor's knowledge of the debtor's insolvency is immaterial. The inquiries are addressed to the honesty of the indebtedness, its amount as commensurate with the value of the property, and the reservation of a benefit to the debtor.—*Hodges v. Coleman*, 76 Ala. 103; *Meyer v. Sulzbacher*, *Ib.* 120; *Levy v. Williams*, *ante*, 176.

The claim is, that Owen Farley, being largely indebted to John for his services as clerk, sold him the goods in satisfaction of the indebtedness. The rendition of the services, and their value, are proved by several disinterested witnesses, who are engaged in business in Mobile. The same witnesses also prove, that he was competent, diligent, and attentive to business, and is an unmarried man, of steady and economical habits. The amount of his compensation was not fixed, but he was to be paid the reasonable value of his services. He boarded in the family, and, when he needed money for other expenses, applied to Owen, who supplied it. No settlement was ever had between them until January 10, 1884. No account with John was kept on the books; no memorandum of the settlement was preserved; and there is no evidence of the amount of compensation allowed, nor of the deductions made on account of money received or advanced for him. On the settlement, it was ascertained and agreed that Owen was indebted to him in the sum of $8,000. In payment and discharge of this indebtedness, Owen sold him the stock of goods, which were valued at $6,000; but, as subsequently ascertained, were not worth so much. Of this, however, the other creditors can not complain.

The indebtedness being established, it is not a matter of grievance to them, that property of value less than its amount is taken in full satisfaction, and a release of the entire debt is is given.—*Chamberlain v. Dorrance*, 69 Ala. 40.

The explanation given of the unusual circumstance of rendering services for fifteen years without an understanding as to definite compensation, and without any settlement, is, that Owen had promised him an interest in the business, and that repeated requests for a settlement were made, which was as repeatedly promised and postponed by Owen, but always admitting he was largely indebted to John. · In October, 1883, John quit the employment of Owen, because of his failure to obtain a settlement, remained away about four weeks, and then returned, on assurances that a settlement should be made. It is said that this is only proved by the brothers. John, in his evidence, names two individuals, who, as he states, were present, and knew of the agreement on which he returned. It is true, the testimony of these persons to the same fact would have corroborated his ; but, so far as appears, they were accessible to examination by the complainant, if they would disprove his evidence. Witnesses, swearing falsely, do not usually name other persons, who are accessible, and can be used to disprove their statements.

We do not concur with counsel, that the only reasonable explanation of the circumstances is, that John was a partner. All the evidence tends to show, that he acted in the capacity of a clerk, being the principal salesman. It does not seem unreasonable, that, in anticipation of an interest, he was willing to permit the amount due him to remain in the business; and it may be that he submitted to the repeated postponements of a settlement, under the influence of this promise, and from his confidence in his brother. Neither is it unreasonable, that an unmarried man, of a saving disposition and economical, should accumulate eight thousand dollars in the course of fifteen years, whose services are as valuable as his are proved to have been. If the usual and average expenses in Mobile, of such a person as the witnesses represent him, exceeded fifteen dollars per month, exclusive of board, the fact was susceptible of proof. It is not shown that, during the time, he made any investments, except the purchases of lands on the shell-road, which aggregated about one thousand dollars ; and five hundred dollars of this, he states, were borrowed from his mother, in October, 1882 ; but he gives no explanation why he was borrowing money, when his brother was so largely indebted to him.

In *Pyron v. Lemon*, 67 Ala. 458, we held, that a sale of lands, by an insolvent father to his sons, about the time they ·

[Moog v. Farley.]

attained their majority, will not be upheld, on their evidence that the land was paid for in services rendered by them, without stating the kind of labor, or its value by the month or year. In *Hubbard v. Allen*, 59 Ala. 283, it was held, that where the alleged consideration of a conveyance, by an insolvent father to his daughter, was money given her as birth-day presents, which the father used, no memoranda or account of which was kept, an estimate of the aggregate amount, on the father becoming insolvent, for which he gave his note, the amount having been estimated from memory, without any *data*, and without recollection of the years in which the presents were made, or of the sum given at any one time, is too vague and uncertain, and is not the clear and full evidence which the law requires, to sustain the conveyance against a creditor whose debt is established. In each of these cases, the conclusion of the chancellor was against the validity of the conveyance. In the present case, the kind of services, their value, and the period of time during which they were rendered, are sufficiently proved. The uncertainty does not consist in the mode of ascertaining the primary amount of indebtedness, or in the *data* from which to estimate it, but in the estimate of the sum of abatement by credits or payments, no account having been kept. The evidence, in respect to its sufficiency, does not fall within the rule, as held in either of the cases cited. When the creditor has satisfactorily established the existence of an indebtedness, and its original amount, he will not be held to show, with the same degree of certainty, the items or amount of credits to which the debtor is entitled. Where a settlement has been had, and credits allowed, in the absence of evidence tending to show that the debtor should have received credits other than those admitted, the creditor will not be required to prove the non-existence of other payments.

Under all the circumstances, some of which are calculated to excite suspicion, and to call for strict scrutiny, it must be conceded, that the evidence of the amount of indebtedness claimed is not as satisfactory and convincing as is desirable, or as it might have been made. The precise sum remains, to some extent, in uncertainty. A reversal, however, involves an affirmation that the circumstances, without other contradictory proof, are clearly sufficient to overcome the positive statements of witnesses, some of whom there is no attempt to impeach. If the proof of the primary indebtedness were of the same character as that relating to its reduction by way of credits or payments, we would not hesitate to declare that the debt had not been sufficiently established. But, whatever might be our conclusion if we were deciding the question originally, we are unable to say, after careful examination and

consideration, that the conclusions of the chancellor are clearly erroneous.

Affirmed.