# Green *et al.* *v.* Emens *et al.*

*Bill in Equity by Creditors to have a Conveyance by Debtor declared fraudulent.*

1. *Sale of goods by insolvent debtor; validity as to other creditors.* Where an insolvent debtor sells and conveys a stock of goods to one for a reasonably fair price, and the purchaser pays the consideration in part cash and executes his promissory notes for the balance, and immediately after the sale the debtor pays the cash received upon the indebtedness to another creditor, and also immediately transferred the notes received by him to other creditors upon his indebtedness to them, who received said notes and gave him credit for the face value thereof, such sale is not fraudulent and void as having been made for the purpose of hindering, delaying and defrauding creditors; and this is true without regard as to what was the intention of the insolvent debtor and his purchaser.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellants against the appellees. The purpose of the bill and the facts of the case necessary to an understanding of the decision

on the present appeal are sufficiently stated in the opinion.

On the final submission of the cause on the pleadings and proof the chancellor decreed that the complainants were not entitled to the relief prayed for, and ordered their bill dismissed. From this decree the complainants appeal, and assign the rendition thereof as error.

E. W. GODBEY, for appellants.—The failure of the answer or amendment to distinctly aver the actual payment of one cent as a cash consideration or the execution of any notes, or any payment on purchase money notes entitles complainants to a decree.—*Freeman v. Stuart,* 119 Ala. 158, 24 So. Rep. 34; *Woods v. Pebbles,* 120 Ala. 100; *Gamble v. Aultman,* 125 Ala. 372.

The sale being on long time was thereby rendered invalid as to creditors, and is not validated by the alleged long subsequent payment of a consideration to other creditors.—*Berry Bank v. Guyon,* 111 Ala. 491; *Oppenheimer v. Guggenheimer* (Fla.), 23 So. Rep. 9; *Lehman v. Kelley,* 68 Ala. 192.

D. W. SPEAKE, *contra.*—There must be an intent to defraud on the part of the debtor, which intent must be participated in by the purchaser.—*Moog v. Farley,* 79 Ala. 246; *Truss v. Davidson,* 90 Ala. 359; *Jordan v. Collins,* 107 Ala. 572.

"The law condemns motives and intents only when they are carried into an act which is itself illegal. If the end accomplished be lawful it is immaterial what may have prompted it, provided the intent itself inflict no personal or pecuniary wrong, and does not aggravate the result. * * * Fraud without injury gives no right of action."—*Carter Bros. v. Coleman,* 84 Ala. 256.

A debtor has the right to pay one or more creditors to the exclusion of others; also the right to sell his property and appropriate the proceeds to the payment of debts of any particular class of creditors to the exclusion of other creditors.—*Knowles v. Street,* 87 Ala. 357; *Lathrop-Hatten Lumber Co. v. Bessemer Sav.*

*Bank,* 96 Ala. 350; *Troy F. Co. v. Norman,* 107 Ala. 667; *Curran v. Olmstead,* 101 Ala. 692; *Bates v. Vandiver,* 102 Ala. 249; *Schloss v. McGuire,* 102 Ala. 626; *Bank v. Dickenson,* 107 Ala. 270; *Bray v. Ely,* 105 Ala. 553; *Bank v. Smith,* 93 Ala. 97; *Rankin v. Vandiver,* 78 Ala. 562; *Moog v. Farley,* 79 Ala. 246.

TYSON, J.—This bill was filed by creditors of one Walden to have declared fraudulent a certain transfer made by him of a stock of merchandise to W. A. Emens & Company, and to hold that firm and the individuals composing it liable as trustees *in invitum* for the value of the goods. Complainants were existing creditors prior to and at the date of the alleged transfer, which it is alleged was without consideration, simulated, fictitious, covinous and void. It is also alleged that Walden, when he made the transfer, was heavily indebted and in sore financial straits if not actually insolvent.

The answer admits the transfer or sale of the goods, but denies that it was without consideration. It avers that the sale was for a valuable consideration, to-wit: one thousand dollars, which was all that the goods were reasonably worth on the market at the date of the purchase. That Emens & Co. were to pay for the goods one hundred and forty dollars in cash and to execute to Walden their two promissory notes, each in the sum of four hundred and thirty dollars each maturing in the fall of 1900. That at the time of the sale and purchase Walden was indebted to Brock & Spight, of Decatur, Alabama, wholesale grocers, for goods purchased of them, in the sum of one hundred and fifty dollars or more; that he was also indebted to Davenport Bros. of Chattanooga, Tenn., in the sum of nine hundred and three dollars for goods, wares and merchandise bought of them, and also to VanValkenburg & Matthews and W. L. Halsey, of Huntsville, Ala., in two different sums amounting in the aggregate to more than five hundred dollars. That Walden, immediately after the sale, took the one hundred and forty dollars and paid it to Brock & Spight upon his indebtedness to them; he also at once took one of the two notes made to him by Emens

& Company and transferred it to Davenport Brothers upon his indebtedness to them, who took it and gave him credit for the face value thereof as and for that much money paid them; the other note he transferred to VanValkenburg & Matthews and W. L. Halsey upon his indebtedness to them, who also took it and gave him credit for the face value thereof.

We have set out the answer thus fully because of the insistence that it fails to distinctly aver the actual payment of one dollar as a cash consideration or the execution of any notes. We think this criticism of the answer hypercritical and unsubstantial.

As to the contention that the answer fails to aver a payment of the notes at maturity, it is needless to say more than that the consideration to be paid for the goods was the one hundred and forty dollars in cash and the execution of the notes. This cash and these notes took the place of the goods in Walden's hands, and, perhaps, if he had appropriated them to his own use or rather had not discharged his indebtedness with them, the sale might be successfully assailed as fraudulent, depending upon the state of the proof as to notice by the purchasers of his fraudulent intent to place his property beyond the reach of his creditors.—*Smith v. Collins,* 94 Ala. 394; *Simmons v. Shelton,* 112 Ala. 284. But when, as here, the proceeds of the sale was applied by the debtor to the payment of his debts, his intent and purpose become immaterial. And so likewise, it is of no moment that the purchasers knew that it was his purpose to sell his property for the purpose of applying its proceeds to the payment of certain debts, to the exclusion of others, if the price paid be reasonably fair, and no benefit was reserved to the debtor out of the transaction. "The law condemns motives and intents, only when they are carried into an act which is itself illegal. If the end accomplished be lawful, it is immaterial what may have prompted it, provided the intent itself inflict no personal or pecuniary wrong, and does not aggravate the result. * * * Fraud without injury gives no right of action."—*Carter v. Coleman,* 84

Ala. 256. In the case just cited and quoted from, Coleman, a merchant, being insolvent, sold his stock of goods to Lawson, his brother-in-law, who knew of his insolvency; the consideration being in part, to pay an antecedent debt due Lawson and the balance to be used in paying other creditors, and it was so used. This court upheld the transaction. It was there further said: "It is settled by numerous rulings of this court that an insolvent or failing debtor, owing more than he has means to pay, may select and prefer a part of his creditors, pay them in full, exhaust his resources, and thus leave himself without means to pay anything to his other creditors." This principle has been so often declared that it would seem useless to cite authorities to support it. However, see cases collated in 3 Mayfield's Dig., 874, §§ 400 *et seq.*

In *Rankin v. Vandiver*, 78 Ala. 562, the purchasing creditor, after satisfying his debt, paid the balance of the consideration to the debtor with the understanding that he was not to retain the money but was to pay it over to certain named creditors of his, which he did. The court said: "It is our opinion that the payment of the money to the debtor by the appellees [the purchasers] did not render the purchase fraudulent, in view of the fact that it was expressly agreed that it should be paid to the other *bona fide* creditors and was so paid to them. There was no semblance of any locking up of the property from creditors, for the use of the debtor, nor one dollar's worth of benefit or profit retained by him."

In *Eufaula Grocery Co. v. Petty*, 116 Ala. 260, upon a similar state of facts, this court sustained the transaction, saying: "The evidence shows that the purchaser paid the debts that he agreed to satisfy and that the debtor applied all the cash received by him to his other debts and reserved no benefit to himself."

In *Moog v. Farley*, 79 Ala. 253, it is said: "Where the proceeds of sale have not been diverted from the payment of debts, but have been honestly applied to the liabilities of the debtor, the transaction will not be pro-

nounced fraudulent. When the property is thus appropriated, other creditors cannot complain."

In *Clements v. Moore,* 6 Wall. 299, Moore purchased a stock of goods of one Nicholson for six thousand, three hundred and ten and 35-100 dollars, giving his several promissory notes aggregating that sum. The sale was openly made; there was an immediate change of possession; the price agreed to be paid was fully as much as the goods were worth. All the notes given by Moore, except three of five hundred dollars each, were applied in payment of Nicholson's debts. Nicholson was insolvent and Moore knew it. He also knew that it was Nicholson's purpose to hinder and delay the complainants. On this state of facts, the court held Moore not liable for the notes, the proceeds of the sale, which had been applied to the payment of Nicholson's debts, but only to the extent of the three notes which had not been so applied.

It is clear from the principles announced in these cases that if Emens & Company paid a reasonably fair price to Walden for the goods purchased of him, without regard to his or their intent, and *bona fide* creditors of Walden got the benefit of the proceeds of the sales, the transaction will not be pronounced fraudulent. The case would not be materially different had Emens & Company paid Walden the cash and he had applied it to the payment of his debts, or had he sold the goods directly to the creditors in payment of their debts to whom he paid the cash and delivered the notes. We apprehend that the absence of an agreement between Emens & Company and Walden that he should appropriate the money and notes to the payment of his debts, can make no possible difference, if in fact they were so applied. Clearly, had there been such an agreement and Walden had violated it and applied the money to his own uses, the purchasers would not have been protected. It is the fact of application by him of the proceeds, which stood in lieu of the goods, that protects the purchasers. Of course, if Emens & Comnay had notice of Walden's insolvency and of his intention to de-

fraud his creditors even though they paid full value for the goods, they would be liable, with or without an agreement that the proceeds should be applied to Walden's debts, if in fact he had not so applied them. In other words, they took the risk, if they had such notice, of his application of the proceeds to the payment of his debts.

Did Emens & Company pay a reasonably fair price for the goods they bought from Walden? Prior to this sale, Walden had sold a portion of his stock of goods to one Lile to pay a debt which he owed him. The invoice price of this lot of goods was five hundred dollars. These goods were set apart and Lile afterwards sold some of them to Emens & Company. This sale to Lile is not assailed by the bill. So, then, whether Lile got more goods than he should have gotten, in payment of his debt, is not a material inquiry. So far as this controversy is concerned, the question is, did he get a title to them from Walden by his purchase and what was the value of the goods? And this only becomes material in view of the contention that he really paid nothing, but was a mere conduit to pass title to Emens & Company who purchased the remainder of the stock later on. We think the evidence satisfactorily establishes a sale to Lile of five hundred dollars of the stock of goods at invoice price; that the goods became his, and that he had the right subsequently to sell them to Emens & Company. There is no pretense that Walden had, including the goods sold to Lile, more than fifteen hundred dollars' worth of goods. So, then, after taking out the value of the goods sold to Lile, the value of the goods that Emens & Company purchased of him could, in no event, exceed one thousand dollars, the purchase price paid for them. We, therefore, agree with the chancellor that the price paid by Emens & Company was adequate. We also agree with him that the evidence satisfactorily shows that the proceeds were applied by Walden to the payment of other *bona fide* creditors. It is true that Walden, the debtor, is the only witness examined to prove this fact. But he swears that he

was indebted to them, and produces their receipts for the proceeds of the sale paid by him to them. The notes executed by Emens & Company are also produced. The indorsements on them show that they were transferred by Walden to the creditors named in the answer and their payment by Emens & Company to those creditors is proven. The names of these creditors and their places of residence, as we have shown, were set out in Walden's answer." He thus furnishes the names of witnesses by whom the alleged payment could be disproved, if his testimony was false. Such testimony, uncontradicted after the means and opportunity afforded, produces a reasonable conviction that the proceeds were applied to the extinguishment of debts justly due; and such application is inconsistent with participation by Emens & Company in an intent to defraud creditors.—*Moog v. Farley,* 79 Ala. 253, *supra.*

Upon the foregoing consideration the writer entertains the opinion that the decree below should be affirmed. However, the views expressed above are simply his individual views. The other members of the court place the affirmance upon other grounds. They hold that the allegation of the bill that the transfer was "without consideration, simulated and fictitious" is not supported by the evidence. On the contrary, the evidence establishes that the sale of the goods was for a valuable consideration and the price paid was adequate. The averment that the transfer was covinous and void is the conclusion of the pleader and is wholly insufficient to support the finding, if true, that the sale was made by Walden with the intent to hinder, delay or defraud his creditors and that Emens & Company, the purchasers, had notice of such intent.—*Flewellen v. Crane,* 58 Ala. 627; *Pickett v. Pipkin,* 64 Ala. 520; *Jones v. Massey,* 79 Ala. 370; *Chamberlain v. Dorrance,* 69 Ala. 40.

Affirmed.