# Eskridge *v.* Abrahams.

*Bill in Equity to annul Conveyance for Fraud as to Creditors.*

1. *Conveyance, what not fraudulent, and will not amount to a general assignment.*—An absolute sale and conveyance by a father, in failing circumstances, of substantially all his property to a son, without reserving any benefit to the grantor, upon the agreement that the price, which was the fair market value of the property, should be paid by the son directly to certain of the father's creditors, whose debts equalled the price for which the land was sold, and which debts the son paid,—can not be set aside as fraudulent, or declared a general assignment; though if the conveyance had not been absolute, but made to the grantee in trust for the payment of such debts, it would amount to a general assignment, under our statutes.

APPEAL from Chancery Court of Sumter.

Heard before Hon. A. W. DILLARD.

James Abrahams, the appellee, sought by his bill against Samuel Eskridge, jr., the appellant, to annul a certain deed made to said Samuel Eskridge, jr., by his father, Samuel Eskridge, sr., on the ground that it was made with intent to hinder, delay or defraud creditors, and in event the deed was not assailable on that ground, to have it declared a general assignment, and to hold Eskridge, jr., liable as an executor *de son tort* for the property received, &c.

The case made by the bill, answer and testimony, may be thus stated: On the 18th day of December, 1866, Samuel

Eskridge, sr., was indebted to Abrahams in the sum of $482, due by promissory note, which at the time of the filing of the bill was still a subsisting liability. On the 18th day of December, 1866, said Samuel Eskridge, sr., conveyed by absolute deed of bargain and sale, all of his real and personal estate, liable for payment of debts, to his son, Samuel Eskridge, jr. The recited consideration was "the sum of $4,346, in hand paid, receipt whereof is hereby acknowledged." This sum probably exceeded the fair value of the property conveyed. When this deed was executed, Samuel Eskridge, sr., was in his last illness, and he died in a few days afterwards. He left a considerable family, and no assets subject to administration, all of his property liable to the satisfaction of his debts having been conveyed, as before stated, to his son ; and no administration has been had on his estate. The extent or amount of his indebtedness is not very clearly shown, and the bill does not allege the existence of any other creditors than the complainant. It appears, however, that he left outstanding debts, to the amount of the value of the property conveyed to his son. At the time of the conveyance, the father resided on the lands conveyed, and the son took and still holds possession under the deed.

The cause was submitted for final decree, on bill, answer, and testimony. The complainant offered his own deposition, and that of Reuben Chapman. Defendant offered his own deposition, and that of May, which had been taken by complainant, but not offered by him. The evidence very clearly proved the consideration, amount, and validity of the note held by complainant.

Abrahams testified, that the property conveyed was worth from five to eight thousand dollars, "according to general information," but he had no personal knowledge of the value ; that he never heard of Samuel Eskridge, jr., having any property, and that his credit was not good at complainant's store; that Samuel Eskridge, jr., promised to pay the debt, and had stated to him that his father made the conveyance to enable him to pay off his debts.

Chapman testified, that he was a neighbor of Samuel Eskridge, sr., and learning of his illness went over to see him. When he arrived, May, who was a subscribing witness to the deed, informed him that Eskridge, sr., desired May to write his will, and he (May) preferred that Chapman would do it. "May stated that the deceased had some apprehension of trouble in reference to his administration, during the war, of the estate of his son-in-law John Smith, and on that account

[Eskridge v. Abrahams.]

thought it necessary to make a will." Neither Samuel Eskridge, sr. or jr., were present when this remark was made. "At this time I had no information but what had been communicated to me by Mr. Sprott, and corroborated by Mr. May." I was in deceased's room but very little. He seemed extremely ill, but was perfectly intelligent, and I had occasion to interrogate him to get the facts to be embodied in the instrument. I did not give any advice, but I did say " to Parson May that a will would not accomplish the purpose indicated."

May testified, that he was with Samuel Eskridge, sr., about nine hours before the deed was executed. Deceased was then quite sick, and something was said about making a will for him. Deceased requested a will to be made, and that I should write it. I requested Gov. Chapman to write it, but this was not done by either one of us. Nothing was said by him about any liability on any bond. " No will was written, because he could not do what he wanted to do by will." I asked him if he intended to make any provision for his family, and he said " they would have to take care of themselves; that he intended to pay his honest debts." This witness further testified, that Samuel Eskridge, jr., had some property before the deed was made, and that his father owed him a considerable sum for work done on the farm, &c.; that the property sold was not worth over three thousand dollars. The father and son had some negotiations about the sale of the lands several weeks before the deed was made. " The intention of Samuel Eskridge, sr., in making the deed was to pay what he owed his son, and enable the son with the balance of the property to pay the other debts." This witness further testified, that deceased told him he was not on any bond; that he had been discharged from the only bond on which he had been liable. The son paid off the incumbrance on the lands conveyed—being the amount due for the purchase-money. He paid a debt to W. G. Little of about $800 or $1,000, and about $1,700 to A. W. Cockrell on account of the purchase-money of the lands. He also paid Dr. Huston's medical bill. "He also paid other debts of his father. He paid me one." Samuel Eskridge, jr., has paid more than the full value of the land. About the time the deed was made, deceased said he could make no provision for his family, but that " he did not believe his son, Samuel, jr., would get married, and he believed he would take care of the family."

The defendant, Samuel Eskridge, jr., testified, that at the

[Eskridge v. Abrahams.]

time of the execution of the deed he owned $1,000 in money and two horses; he had also made considerable money the fall before in building gin-houses and screws; that his father owed him for services after he became of age, and for cotton which his father sold. He did not pay his father any thing, but assumed certain debts of his father amounting to the purchase-money. The property was hardly worth that amount. In answer to cross-interrogatories, he testified, that the consideration of the deed was what his father owed him, and the son's assumption of certain debts, which he set forth, amounting in all to $4,392. "My assuming the debts was considered by my father as cash. It was his purpose to pay his debts, and this is the reason the deed recites the purchase as a cash transaction. He was relieved from all further responsibility." The answers to the cross-interrogatories were suppressed for some informality.

The chancellor decreed that the deed was fraudulent as to complainant, and also amounted to a general assignment, and directed a sale for the payment of the amount of the note, as ascertained on reference to the register. This decree is now assigned as error.

SNEDICOR & COCKRELL, for appellant.

R. H. SMITH, and THOS. COBBS, contra.

STONE, J.—The recited consideration of the deed, which the bill in this case seeks to set aside as fraudulent, is four thousand three hundred and forty-six dollars. There is no testimony that the land and other property was worth more than that sum, or even that much. On the contrary, the testimony tends to show that the property conveyed was not worth that sum. Eskridge, the defendant, testifies that when he made the purchase he paid no money, and that by the terms of the purchase, he was not to pay any thing to his father, the vendor. He was to pay to certain creditors of his father, sums of money which amounted to the purchase price of the land. He testified in his cross-examination that he had made payments to various named creditors of his father, amounting to the aggregate sum of forty-three or forty-four hundred dollars. True, this part of his deposition was suppressed; but it furnished the complainant information of the persons to whom he alleged he had made payments, and thus enabled him to disprove the alleged payments, if the claim was false. The testimony of May,

taken by complainant, but not offered by him, corroborates Eskridge as to the conditions of the purchase, and the agreed manner of payment; and this witness proves that Eskridge, jr., had paid the debts he had agreed to pay. As we said above, if Samuel Eskridge, the younger, did not pay these debts, as his own testimony and that of May tends to show, ample means was furnished complainant to disprove the pretense, and he has failed to do it. It is manifest that the testimony in this case is less full than it might be made. Still there is enough, unrebutted as it is, to produce a reasonable conviction that Samuel Eskridge, jr., paid the debts of Samuel Eskridge, sr., which, by the terms of the purchase, he agreed to pay; and there is not only a failure to prove the property was worth more than the price promised and paid, but the testimony is that the property was worth less.

Much stress is laid on the fact that Gov. Chapman testifies that a will was first spoken of, and that he informed Mr. May that the object contemplated could not be carried out by a will. Neither he nor any other witness explains what is here meant. If the object was that all the property should go to all the debts in equal proportion, then that object could have been accomplished by a will, or the law would have accomplished it, less dower and exemptions, without either will or deed. We suppose his object was to pay certain debts with his property, which would, in effect, give a preference to certain named creditors over others. A debtor, not owning property sufficient to pay all his debts, may, by a sale made in good faith, devote his entire property to certain of his debts, and leave his other debts unprovided for. *Crawford v. Kirksey*, 55 Ala. 282. And, in such case, it matters not whether the property, if sold for its fair market value, is transferred to the creditor himself, or sold to another, and the payment made to the creditor. When the consideration-money is the reasonable value of the property, is actually paid by the purchaser, and goes to the *bona fide* creditor of the seller, there is no fraud in such transaction, although other creditors equally meritorious lose their demands. Failing debtors have the right to prefer one creditor to another by an honest sale, unless they thereby secure some benefit, bounty, or secret trust for themselves or families. We think Gov. Chapman's advice in this case was based on the communicated wish of Samuel Eskridge, sr., to devote his property to certain named debts. The testimony of May goes to prove this; for he testifies that Samuel, sr., stated his object was to pay his debts, and that he could not make

[Galbreath v. Cole.]

any provision for his family. We think the testimony justifies this conclusion, and we fail to find anything in this circumstance, tending to establish fraud or secret trust.

As we understand the testimony in this record, it does not tend to show that the property was transferred to the younger Eskridge *in trust* for the payment of the elder Eskridge's debts. If such were the case, then it would have the properties of a general assignment, for it conveyed everything of value which the grantor owned.—See authorities collected in *Crawford v. Kirksey*, 55 Ala. on page 302. The present transaction was an absolute sale and conveyance from father to son, with the stipulation that the purchase-money was to be paid to certain creditors of the grantor, and not to the grantor himself. This does not change its quality, as a deed of bargain and sale. It is not a general assignment.

There is an entire failure of proof in this case that the support of grantor's family was to be any part of the consideration of the conveyance. True, he expressed the belief that his son would not marry, and that he would " take care of his, grantor's family." This would be but the discharge of a filial duty, which might be expected of a dutiful son. The witnesses, May and Eskridge, testify that there was no agreement to that effect. This declaration of the dying father can not avoid the present conveyance, which is otherwise shown to be a deed of bargain and sale, upon full consideration paid. If there was simulation of payment, or secret trust, it has not been proved.

The decree of the chancellor is reversed, and a decree here rendered dismissing complainant's bill.

Reversed and rendered.