[Rankin & Co. v. Vandiver & Co.]

# Rankin & Co. *v.* Vandiver & Co.

*Trial of Right of Property in Stock of Goods.*

1.  *Sale of goods by insolvent debtor to creditor; validity as against other creditors.*—A sale of his entire stock of goods by a failing or insolvent debtor, at a fair and reasonable valuation,·in absolute payment and satisfaction of a *bona fide* debt, no interest or benefit being reserved to himself, is not fraudulent as against his other creditors; and the payment of an additional sum of money by the purchasing creditor, the estimated difference between the amount of his debt and the value of the goods, does not render the transaction fraudulent, when it is shown that the money was paid under an express stipulation that it should be applied in payment of the debt due to another *bona fide* creditor, and that it was so applied.

2.  *What passes under sale of "goods, wares and merchandise."*—Under a sale of "all my stock of goods, wares, and merchandize in my store," an iron safe will pass to the purchaser, if such was the intention of the parties at the time.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JAMES E. COBB.

This was a trial of the right of property in and to a stock of goods, between the appellants, plaintiffs in attachment against W. T. Duke, and Vandiver & Co. and Bolling & Son as claimants. Said Duke was a merchant engaged in business at Notasulga, and also carrying on another store at Loachapoka. The attachment of Rankin & Co. was sued out on the 20th November, 1885, and was levied the same day on the stock of goods, then in the possession of the claimants as purchasers; their bill of sale from said Duke, which was produced on the trial, being dated Montgomery, November 18th, 1885, and in these words: "For and in consideration of the sum of $4,937.32, I hereby bargain, sell and deliver to W. F. Vandiver & Co. and R. E. Bolling & Son all of my stock of goods, wares and merchandise, in my two stores, one at Loachapoka, and one at Notasulga; except fifteen kegs of nails, and one box of tobacco, in my store at Notasulga, and a one-horse wagon in my store at Loachapoka." It was proved on the trial, as the bill of exceptions states, that said Duke was insolvent at the date of this bill of sale, and his insolvency was known to the claimants, who were pressing him for payment of their debts; that he went to Montgomery on that day, and attempted to borrow money from the claimants to pay off some other pressing debts; that they refused to advance any money to him,

" but finally agreed to buy, and did buy from him, his said stock of goods at Notasulga and Loachapoka, by cancelling their debts against him, which amounted to $2,937.12, and paying him $2,000 in cash ; that said Duke told them, at the time said trade was made, he wanted said $2,000 to pay three debts which were pressing him—namely, a guano debt, an execution debt, and a debt for borrowed money—which aggregated a little more than $2,000, and were *bona fide* debts ; that it was expressly stipulated at the time, between claimants and said Duke, that the whole of said $2,000 was to be used by him in paying said debts ; and that it was used by him, not long after he got it, in paying said three debts, reserving no part to his own use.  The evidence tended to show, also, that the price paid by claimants was the reasonable value of the property, and that said stocks of goods were substantially all the property he had at the time of the sale, that was subject to levy and sale under execution."

On this evidence, the court charged the jury as follows : "If the jury believe, from the evidence, that Duke in good faith sold out his two stocks of goods to the claimants, to pay their indebtedness against him, and also to get money to pay three certain debts that were pressing him ; and that this purpose was known to the claimants at the time they bought ; and that the money paid him by claimants was used by Duke in paying off said three debts ; and that the price paid for said goods was fair and reasonable ; then the claimants acquired a good title to said goods, even though they knew at the time that Duke was insolvent and in failing circumstances, and though they also knew that the known effect of said sale was to hinder or delay other creditors of said Duke."  The plaintiffs excepted to this charge, and requested several charges in writing, each of which asserted, in substance, the invalidity of the sale to claimants on the facts stated ; which charges the court refused to give, and the plaintiffs excepted.

An iron safe was among the goods levied on, which was in Duke's store at Notasulga at the time of the sale to claimants, " and was used by him in connection with his business, in which to keep his money, books and papers ; but he did not keep it for sale, and nothing was said about it when he sold out to the claimants."  Duke, being examined as a witness on the trial, was asked by claimants, on cross-examination, "if it was his understanding and intention, at the time of the sale, that the iron safe should be sold with his stock of goods ; and he answered, that it was."  As to this matter, the court charged the jury :  "If the jury believe, from the evidence, that the bill of sale does not set forth and enumerate all the property intended by the parties to be included in said sale ;

[Rankin & Co. v. Vandiver & Co.]

and further, that it was the intention of the parties that the safe should pass to the claimants with the other goods; then they must find the safe to belong to the claimants, and not subject to the claims of plaintiffs, if they find for the claimants as to the other goods in controversy." To this charge, also, the plaintiffs excepted.

The charges given, and the refusal of the charges asked, are now assigned as error.

W. F. FOSTER, and ABERCROMBIE & BILBRO, for the appellants.—A *bona fide* creditor, knowing that his debtor is insolvent, or in failing circumstances, may lawfully procure the payment of his own debt, although the known effect of the transaction may be to hinder or delay · other creditors. But satisfaction of his own debt is the limit to which he may lawfully go, and this must be secured without the reservation of any benefit to the debtor, or any interference with the equal rights of other creditors. Any payment of money to the debtor, over and above the purchasing creditor's own debt, secures a benefit to the debtor, and allows him to make an unlawful preference among his other creditors. An express stipulation between the parties, at the time the payment is made, that the money shall be used in paying other debts particularly specified, can not change the principle ; since the creditor has no means of enforcing it, and the debtor may, notwithstanding, use the money as he pleases. The transaction must be judged by its legal effects, and the opportunities which it places in the hands of the debtor to defraud other creditors, or to benefit himself; and his subsequent application of the money as stipulated, can not change its legal effect. The adjudged cases show that payment of his own debt is the utmost limit to which the creditor may go.—*Borland v. Mayo*, 8 Ala. 104; *Crawford v. Kirksey*, 55 Ala. 282 ; *Lehman, Durr & Co. v. Kelly*, 69 Ala. 192 ; *Hodges v. Coleman & Carroll*, 76 Ala. 103 ; *Levy v. Williams*, at present term.

E. P. MORRISSETT, and TROY, TOMPKINS & LONDON, *contra.* (1.) The claimants might lawfully take goods, at a fair and reasonable valuation, in absolute payment of their own debt; and the fact that they also stipulated for and procured the payment of another *bona fide* debt, to which the debtor himself might have applied the remnant of his goods, does not affect the legality of the transaction. The test is, whether or not any benefit was reserved to the debtor himself.— *Young v. Dumas*, 39 Ala. 60; *Crawford v. Kirksey*, 55 Ala. 282; *Chamberlain v. Dorrance*, 69 Ala. 40; *Eskridge v. Abrahams*, 61 Ala. 134; *Wood v. Shaw*, 29 Ill. 444; Bump Fraud. Conv. 195, 205,

[Rankin & Co. v. Vandiver & Co.]

207; *Bank v. Carter*, 38 Penn. St. 446; *Gregory v. Harring-ton*, 33 Vt. 241; *Brown v. Smith*, 7 B. Mon. 361; *Ford v. Williams*, 3 B. Mon. 550. (2.) The iron safe might pass to the purchaser under the general descriptive words of the bill of sale, if so intended by the parties.—2 Whar. 155; 2 Mo. App. 61; 20 Mich. 353; *Evans v. Roberts*, 5 B. & C. 829; 9 B. & C. 561. If the words were general and uncertain, they could be rendered certain by parol evidence.—*Sykes v. Shows*, 74 Ala. 382; *Guilmartin v. Wood*, 76 Ala. 209; *Jones v. Anderson*, 76 Ala. 427; *Acker v. Bender*, 33 Ala. 230.

SOMERVILLE, J.—All the charges requested by the appellants, and refused by the court below, attack for fraud the sale of goods made by Duke to the appellees on November 18th, 1885. The transaction is claimed to be fraudulent, as one made by the seller or debtor with intent to hinder, delay, or defraud his creditors, he being at the time insolvent and in failing circumstances. It is not denied that the price or consideration paid for the goods was fair and adequate, nor that it was in fact paid. The only objection urged to vitiate the sale is, that the purchasers paid to the seller, as a part of the consideration, the sum of two thousand dollars *cash*, the remainder of the consideration only, or about three thousand dollars, being the payment of an antecedent debt.

No doubt can be entertained as to the proposition, that the transaction would have been entirely unassailable for fraud, as an authorized preference of creditors by a failing debtor, but for the payment of a portion of the consideration in *money*. Our past decisions fully settle this.—*Hodges v. Coleman*, 76 Ala. 103, 120; *Meyer & Co. v. Sulzbacher*, 76 Ala. 120.

It is manifest that the only sound reason, upon which it can be urged that the payment of money or cash to the vendor would vitiate the sale, must be, that it is a retention of a benefit in his favor. The conversion of a failing debtor's property into cash, which is more readily "shuffled out of sight" than property, is often a potent fact to prove that it was paid by the purchaser for the purpose of aiding him in executing a purpose to defraud. If such was this case, without more, we might hold that many of the charges requested by the appellants should have been given in the form requested.—*Lehman v. Kelly*, 58 Ala. 192, 200; *Borland v. Mayo*, 8 Ala. 104; *Covanhoven v. Hart*, 21 Penn. St. 495; *Eskridge v. Abrahams*, 61 Ala. 134; *Benedict v. Renfro*, 75 Ala. 121; s. c., 51 Amer. Rep. 429.

But the facts of this case are different from those of any one which has been heretofore presented to this court for decision. It is shown that the vendor of these goods—the debtor, Duke

—owed the sum of two thousand dollars to certain specified creditors, three in number, who were pressing him for payment of their demands ; that this fact was made known to the vendees at the time of the sale, and that they expressly stipulated with the debtor that he was not to retain this money, but was to pay it over to these named creditors, whose claims are shown to have been honestly due. This payment is shown to have been faithfully made as was stipulated. If Duke, by way of preference, had transferred the *goods* to the three other named creditors, jointly with the appellees, in payment of their debts, and these three purchasers had afterwards sold their interest in the goods to appellees for the same sum of two thousand dollars in money, no one would say that any interest had been reserved, benefit secured, or secret trust created in Duke's favor. Yet the present case is obviously, in substance, precisely the same as that, saving only the circuity of the transaction. If one is fraudulent, the other must be. This mere indirection could not remove the taint of fraud, were it present; for, as has been forcibly said, "the law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice and truth."—*Rogers v. Hadley*, 32 L. J Exch. 248.

It is our opinion, that the payment of the money to the debtor by the appellees did not render the purchase fraudulent, in view of the fact that it was expressly agreed that it should be paid to the other *bona fide* creditors, and was so paid to them. There was no semblance of any locking up of the property from creditors, for the use of the debtor, nor one dollar's worth of benefit or profit retained by him. The creditors were no more hindered, defrauded, or delayed by the disposition of this money, than by that of the goods. A sale made with intent to make a lawful preference, under the facts in evidence, is not a fraudulent sale.

There was no error in the rulings of the court touching this phase of the case.

The iron safe would certainly fall within the descriptive phrase, " goods, wares, and merchandise," as used in the bill of sale, and would pass to the purchasers, if such was the intention of the contracting parties, as inferred from the surrounding facts and circumstances. The charge given by the court at the request of the claimants, in effect, only announced this principle, and was properly given.

We discover no error in the record, and the judgment must be affirmed.