# Mobile Savings Bank *v.* McDonnell.

*Ejectment by Creditor, against Grantee of Insolvent Debtor.*

1. *Consideration of deed; burden of proof, as between grantee and existing creditor of grantor.*—As between the grantee in a conveyance executed by an insolvent debtor, in payment and satisfaction of an antecedent debt, and an existing creditor who, having reduced his demand to judgment, attacks the conveyance for fraud, the *onus* is on the grantee to show that the consideration of his deed was both valuable and adequate; and a failure to establish either fact is fatal to his defense.

[Mobile Savings Bank v. McDonnell.]

2. *Same; what is valuable consideration.*—The grantee being bound as surety or indorser for the grantor, on a note due to a third person, an agreement between them that he shall assume the debt as principal, constitutes a valuable consideration for a conveyance of property, although the assent of the creditor is not shown, and the note is renewed at maturity without a change of parties.

3. *Same; variance between recitals and proof.*—When a deed recites as its consideration the payment of a debt due by the grantor to the grantee, the true consideration may be shown to be an agreement between them that the grantee should assume as principal a debt due to a third person, on which he was bound as surety for the grantor.

4. *Argumentative charges.*—A charge requested which specifies and calls the attention of the jury to particular facts and circumstances as tending to show fraud, is properly refused because argumentative.

5. *Sufficiency of consideration.*—When a conveyance executed in payment of an antecedent debt is attacked for fraud by existing creditors, the *onus* of proving the sufficiency of the consideration being on the grantee, the law "will not weigh considerations in diamond scales," nor balance the property against the price so closely as to leave no room for ordinary differences of opinion; yet, where the evidence shows that the price was only about two-thirds of the value of the property—as $1,300 to $2,000, or $1,600 to $2,500—the question should be submitted to the jury whether the disparity does not amount to gross inadequacy.

5. *Declarations of person in possession.*—The declarations of a person who continues in possession of land after he has sold and conveyed to another by deed duly recorded, to the effect that he is holding as agent of his grantee, are competent evidence for the latter in a contest with creditors, who attack the conveyance on the ground of fraud.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by the Mobile Savings Bank, to recover the possession of a tract of land particularly described; and was commenced on the 3d March, 1888. Mrs. Kate McDonnell and F. H. McLarney, as executrix and executor of the last will and testament of James McDonnell, deceased, intervened as landlords of the tenants in possession, and defended on the title of their testator. The land had belonged to John O'Donnell, and each party claimed under him; the plaintiff, by a purchase at sheriff's sale under judgment and execution against him, the judgment being rendered on the 18th July, 1887, and the sheriff's deed to the bank as the purchaser dated 20th September, 1887; and the defendants under a deed executed by said John O'Donnell to their testator, dated July 30th, 1885. The plaintiff's judgment was founded on a debt or debts of O'Donnell which antedated his conveyance to James McDonnell, and the plaintiff assailed that conveyance on the ground of fraud. The plaintiff having proved that O'Donnell continued in possession of the property, collecting the rents, making repairs, &c., up to the levy of plaintiff's execution, the court

allowed the defendants to prove, against the objection of the plaintiff, said O'Donnell's declarations to the person whom he employed to collect the rents from the tenants, "that he was not the owner of the property, but was acting as agent for somebody else;" and to the admission of this evidence the plaintiff excepted. The facts proved on the trial, as to the consideration of the deed from O'Donnell to James McDonnell, are stated in the opinion, and no farther statement of them is necessary.

The court gave the following charge to the jury, at the instance of the defendants, the plaintiff excepting to it: "If the jury believe from the evidence that O'Donnell and wife conveyed certain property, including that sued for, to James McDonnell for $1,644.50, under an agreement that O'Donnell should reduce a sixteen hundred and odd dollar note to a thousand dollars, and that McDonnell, in consideration of the conveyance, should then pay the balance thereof, and credit the balance of said purchase-money on a debt due to him by O'Donnell; and if there was no agreement for the reservation of any right or benefit to said O'Donnell, other than such as might arise from the payment of this debt as aforesaid; the jury ought to find a verdict for the defendant, provided they further believe from the evidence that, at the time of the conveyance, the fair value of the property conveyed did not exceed $1,644.50."

The court also gave, of the charges asked in writing by the plaintiff, the following: "(5.) If the jury believe from the evidence that the plaintiff, prior to July 30, 1885, was a *bona fide* holder for value of promissory notes made by Peter Burke, and indorsed by said O'Donnell, and which were then running to maturity; and that plaintiff recovered a judgment on said notes, against said O'Donnell, on the 18th July, 1887; and that an execution was regularly issued on said judgment, and levied on the property now sued for; and that said property was sold under said execution, in September, 1887, and purchased by plaintiff, and conveyed to plaintiff as the purchaser by the sheriff; and that said O'Donnell, a short time before said judgment was recovered and said execution issued, was in possession of the property sued for, either by himself or by agent, collecting the rents, or exercising other acts of ownership over it; then plaintiff has made out a *prima facie* case, and is entitled to a verdict unless defendants have made out a good defense."

The plaintiff also asked other charges in writing, and duly excepted to their refusal, namely:

"(2.) If the jury believe from the evidence that when the deed from O'Donnell to McDonnell was made, July 30, 1885, the plaintiff was the *bona fide* holder for value of several promissory notes made by Peter Burke and indorsed by said O'Donnell, and which were then running to maturity; and that plaintiff recovered a judgment on said notes, against said O'Donnell, on the 18th July, 1887; and that an execution was regularly issued on this judgment on 1st August, 1887, and was levied on the land here sued for; and that the same was regularly sold under said levy, and purchased at said sale by plaintiff, and conveyed to plaintiff by the sheriff; and that O'Donnell was in possession of the property prior to said sale, collecting the rents, or exercising other acts of ownership over it; then the jury must find for the plaintiff, unless the defendant has satisfied them on the evidence that, prior to the date of said sale by the sheriff, and prior to the issue of execution on said judgment, James McDonnell or his representatives had in good faith purchased and paid for the property, and gone into actual possession of it, or else has introduced evidence showing satisfactory and sufficient reasons, consistent with honesty and fair dealing, for said O'Donnell being allowed to remain in possession of the property notwithstanding the sale and conveyance by the sheriff."

"(3.) If the jury believe the evidence, they must find for the plaintiff."

"(4.) If the jury believe from the evidence that, prior to July 30, 1885, plaintiff was a *bona fide* holder for value of several promissory notes made by Peter Burke, indorsed by O'Donnell, and then running to maturity; and that plaintiff recovered a judgment against O'Donnell on said notes, on the 18th July, 1887; and that an execution was regularly issued on said judgment, and levied on the property here sued for; and that said property was regularly sold under said levy, on the first Monday in September, 1887, and purchased by plaintiff, and conveyed to plaintiff by the sheriff of the county; and that a short time before said judgment was recovered and execution issued, said O'Donnell was in possession of said property, either by himself or by any agent of his, collecting the rents, or exercising other acts of ownership over it; then the jury must find for the plaintiff, unless the defendants have shown from the evidence that there

is a better title outstanding than that which has been shown by the plaintiff; and further, that if the only title set up by defendants is the said paper dated July 30, 1885, purporting to be a deed from said O'Donnell to James McDonnell, and the jury believe from the evidence that said deed was not in fact given and received in actual payment of a debt then actually due from O'Donnell to McDonnell, then they must find for the plaintiff."

"(12.) If the jury believe from the evidence that plaintiff has made out a *prima facie* case, as stated or suggested in the 5th charge asked [and given], then, to defeat a recovery by plaintiff, it will not be sufficient for the defendants to have shown that, on July 30th, 1885, O'Donnell made a deed to James McDonnell which embraced the property in controversy, if the jury believe from the evidence that the sum of $1,644.50, recited in the deed as the consideration therefor, was a grossly inadequate price to be paid, at that time for the property it purported to convey."

"(13.) If the jury believe from the evidence that plaintiff has made out a *prima facie* case, as stated or suggested in said 5th charge, then the plaintiff is entitled to recover, unless defendants have shown a better title outstanding in them, or in some other person; and if the only claim of outstanding title set up by them has its foundation in said deed of July 30, 1885, then the jury are to consider whether or not it was made and received with intent to hinder, delay or defraud the creditors of said O'Donnell; and if the jury should believe upon the evidence that it was made and received with such intent, they must find for the plaintiff. In such a case, certain circumstances are held and considered by the law to be badges of fraud, and which the jury would have to consider in determining whether or not the deed was fraudulent. Thus, if the jury should believe from the evidence that said deed, although absolute on its face, was really intended by the parties as a mortgage, then, in the eye of the law, it would be fraudulent and void. So, also, if the consideration expressed in the deed, or agreed to be paid, was much below the value of the property at the time, this would be a circumstance from which the jury would be authorized to infer that the deed was fraudulent and void. Also, when an absolute deed is made for property, the law expects the grantee to go immediately into the possession of it; and if he fails to do so, and permits the grantor to remain in possession for any considerable time after the date

of the transaction, the jury are authorized to presume that the conveyance is fraudulent and void. It is true that the law will sometimes permit the parties to make a satisfactory explanation, if they can, of the reason for the possession being allowed to continue for a time with the grantor; but, in the absence of such explanation, the conveyance is presumed to be fraudulent and void; and even if it should have been shown that a valuable and sufficient consideration was to have been paid, and was actually paid for the deed, this will not, of itself, furnish any sufficient reason for a failure on the part of the grantee to have taken possession of the property immediately upon the making of the deed; and in the absence of such explanation being furnished by the defendants, the jury are authorized to find the deed fraudulent and void."

"(14.) If the jury believe from the evidence that the plaintiff has made out such a *prima facie* case as is stated or suggested in said 5th charge, then plaintiff is entitled to recover, unless the defendants have shown a better title outstanding in themselves or some other person; and if the only claim of outstanding title set up by the defendants has its foundation in said deed of July 30, 1885, then the jury are to consider whether or not said deed was made and received with intent to delay, hinder or defraud the creditors of said O'Donnell. In considering how this was, if the jury believe that said deed was really intended by the parties as a mortgage, then the law holds it to be fraudulent and void, and the jury must find for the plaintiff. If, on the other hand, the jury should believe from the evidence that it was intended, not as a mortgage, but as an absolute sale, then, if the consideration expressed in the deed, or agreed to be paid, was much below the real value of the property at the time; or if the deed was not given in payment of any debt due from said O'Donnell to McDonnell existing at that time; or if the possession of the property was not delivered to the grantee for a considerable period after the date of the deed, or until the property was levied on under plaintiff's judgment and execution, and if O'Donnell continued to collect the rents, and pay the taxes on the property, while the defendants, on the other hand, failed to give in the property to the assessor for taxation, or to pay any taxes on it,—all these are circumstances from which the jury are authorized to infer that said deed of July 30th is fraudulent and void."

"(15.) If the jury believe from the evidence that the

plaintiff has made out such a *prima facie* case as is stated in said 5th charge, and that the only consideration for said deed from O'Donnell to James McDonnell was the liability of James McDonnell as indorser on O'Donnell's note for $1,644.50, held by Kapahn; and that said indebtedness to Kapahn was, after July 30, 1885, renewed for the same amount, in one or more notes made by said O'Donnell and indorsed by said McDonnell; then the recital in said deed, of payment of the indebtedness therein referred to, is untrue, and the jury must find for the plaintiff."

"(16.) If the jury believe from the evidence that plaintiff has made out a *prima facie* case, as stated or suggested in said 5th charge, then, to defeat a recovery by plaintiff, it will not be sufficient for the defendants to have shown that on the 30th July, 1885, said O'Donnell made said deed to James McDonnell, embracing the property now in controversy, if the jury believe from the evidence that the consideration stated in the deed was the payment of a debt for $1,644.50 due from said O'Donnell to James McDonnell, while the real understanding between them was to the effect that, upon a debt of said O'Donnell by note for $1,644.50, indorsed by said James McDonnell, only one thousand dollars was to be paid by said James McDonnell, and the rest of said debt by said O'Donnell."

The affirmative charge of the court, the refusal of the several charges asked by the plaintiff, and the admission of the evidence objected to, are now assigned as error.

T. A. HAMILTON, and S. P. GAILLARD, for appellant, submitted separate briefs, in which they argued each of the assignments of error, and cited the following authorities: *Houston v. Blackman*, 66 Ala. 562; *Lawson v. Ala. Warehouse Co.*, 80 Ala. 341; *Campbell v. Davis*, 85 Ala. 60; *Sims v. Gaines*, 64 Ala. 392; *Hartshorn v. Williams*, 31 Ala. 149; *Hill v. Rutledge*, 83 Ala. 162; *Bryant v. Young*, 21 Ala. 264; *Gordon v. McIlwain*, 82 Ala. 251; 16 Ala. 25; 14 Ala. 818; 2 Stew. 336; 60 Ala. 546; 72 Ala. 57; 59 Ala. 283, 296; 71 Ala. 202; 1 Greenl. Ev., §§ 99, 124, 147; 1 Whart. Ev., § 228; *Arthur v. Gayle*, 38 Ala. 259.

GREG. L. & H. T. SMITH, *contra*, cited *Meyer v. Sultzbacker*, 76 Ala. 121; *Hodges v. Coleman*, 76 Ala. 103; *Levy v. Williams*, 79 Ala. 175; *Moog v. Farley*, 79 Ala. 246; *Crawford v. Kirksey*, 55 Ala. 282; *Seaman v. Nolen*, 68 Ala.

466; *Noble v. Coleman*, 16 Ala. 77; *Tompkins v. Knuckles*, 53 Ala. 200; *Leinkauff & Strauss v. Frenkle*, 80 Ala. 140; *Lehman, Durr & Co. v. Kelly*, 68 Ala. 192; *Lipscomb v. McClelland*, 72 Ala. 151; *Flewellen v. Crane*, 58 Ala. 627; *Chamberlain v. Dorrance*, 69 Ala. 40; *Tryon v. Flournoy & Epping*, 80 Ala. 326; *Shealy & Finn v. Edwards*, 75 Ala. 411; *Thames v. Rembert*, 63 Ala. 568; *Eskridge v. Abraham*, 61 Ala. 134; *Caldwell v. King*, 76 Ala. 156; *Rankin v. Vandiver*, 78 Ala. 566; *Kirkland v. Trott*, 66 Ala. 417; *Humes v. O'Brien*, 74 Ala. 64.

McCLELLAN, J.—This is an action of ejectment prosecuted by the Mobile Savings Bank against Kate McDonnell *et al.*, who claimed through James McDonnell, deceased. The bank was a creditor of John O'Donnell on July 30, 1885, at which date he conveyed the land in controversy to said James McDonnell, upon a consideration which, according to the leading recital of the deed, was $1,644.50 in money paid; but this recital was qualified by a subsequent clause of the instrument, which is in the following language: "This conveyance is made in payment of a debt due by said John O'Donnell to said James McDonnell for the sum of $1,644.50." Subsequent to the execution of this conveyance, the claims of the bank against O'Donnell were prosecuted to judgment, and at a sale under execution isssued on the judgment the bank became the purchaser, and received the sheriff's deed to the property. It appeared in evidence, that O'Donnell continued in possession of the land, exercising acts of ownership over it, up to the time of the sheriff's sale; but, on the other hand, evidence was introduced which tended to explain this fact, and to show that O'Donnell's continued possession was as the agent of McDonnell.

The facts above outlined, as also the deeds of the sheriff to the bank, and of O'Donnell to McDonnell, were adduced in evidence by the plaintiff on the trial below; and, on the assumption that the consideration of the deed from O'Donnell to McDonnell was the payment of an antecedent debt, a *prima facie* case was thus made out entitling the plaintiff to a verdict without further proof, unless the defendants showed that the consideration which passed from McDonnell to O'Donnell was both *valuable and adequate.*—*Hodges v. Coleman*, 76 Ala. 103; *Pollak v. Searcy*, 84 Ala. 259; *Roswald v. Hobbie*, 85 Ala. 73; *Morrison v. Morris*, 85 Ala. 196.

In discharging the *onus* thus cast upon them, the defend-

ants introduced evidence which tended to show, that the consideration consisted of the extinguishment of the grantor's liability on two certain notes.    One of these notes was made by the grantor, indorsed by the grantee, and payable to one Kapahn.    The other appears to have been a note executed by Peter Burke, indorsed by the grantor, and payable to the grantee.    The Kapahn note was for $1,644.50.    The agreement between O'Donnell and McDonnell, which the evidence tends to establish with respect to this note, was, that the former should reduce the amount by payment to $1,000, and that the latter should assume the payment of that balance. There was no evidence that this balance had ever been paid, or that the payee ever released O'Donnell from liability for it; but, on the contrary, it appears that the note for the reduced amount was renewed subsequent to the conveyance of July 30, 1885, by O'Donnell, and the renewed paper indorsed by McDonnell, as had been the original.    It will have to be considered, therefore, that the tendency of the evidence, with respect to this liability of O'Donnell, goes no further than to afford a basis for the inference that, as between him and his indorser, McDonnell, the debt was to be solely that of the latter, but that they both remained bound to Kapahn; and that the consideration of the conveyance, so far as it resulted from that transaction, was the obligation of the grantee to pay this debt, which the grantor, primarily, and himself as surety, owed to Kapahn.    The rulings of the trial court, on instructions given and refused, raise the inquiry whether this was a valuable consideration for the conveyance. In our opinion, it was.

It has been several times ruled by this court, that a conveyance made in consideration of the grantee's discharging a debt due from the grantor to a third person, should be upheld, when assailed for fraud on the alleged infirmity of a lack of a valuable consideration.—*Eskridge v. Abraham,* 61 Ala. 134; *Rankin v. Vandiver,* 78 Ala. 562.    It is equally well settled, that the fact that the purchase-money of property sold by an insolvent debtor has not been paid, but, on the contrary, time is agreed on in which it should be paid, and notes executed for its payment at such time, do not subject the transaction to an imputation of fraud, or invalidate it as against creditors of the vendor.—*Shealy v. Edwards,* 75 Ala. 411; s. c., 78 Ala. 176; *Caldwell v. King,* 86 Ala. 149.    It would seem to logically result from these two established propositions, that a sale of property by a

debtor in failing circumstances will be sustained, so far as the character of the consideration is concerned, against the attacks of creditors, when it appears that the grantee has legally obligated himself to pay a debt due by the grantor to a third person; and, on principle, it would further appear to be immaterial whether such third person had assented to the substitution or not, since, in any event, the grantor would have the purchaser's obligation to pay the sum agreed on.

But the conclusion need not be rested on deduction from other adjudged propositions. The question itself has been the subject of judicial inquiry and determination. Thus, in Indiana, under statutory provisions similar to those in Alabama, it has been held that, "where a surety assumes the debt of his principal, and mortgages his real estate to secure it, and, in consideration of these acts, personal property is conveyed to him by the principal, the transaction rests upon a valuable consideration; and the conveyance can not be set aside, unless it be made to appear that both buyer and seller were guilty of fraud."—*Powell v. Stickney*, 88 Ind. 310.

In discussing a like question, Rice, C. J., in *Reynolds v. Cook*, 31 Ala. 637, says; "We do not doubt that a valid conveyance of personal property, to provide indemnity for the sureties on a guardian's bond, may be made." But, under our statutes, "it is essential to the validity of such a conveyance, that, at least, its whole purpose should be the devotion of the property, *bona fide*, to the indemnification of the sureties. If a part of its purpose is that it shall avail or be used for the ease or favor of the grantor, it is void as to creditors." And in that case, the conveyance was held void, because of the reservation of a benefit; while the doctrine, that the assumption of liability by the surety for the debt of the grantor constituted a valuable consideration, was fully recognized. That, it would seem, is the principle involved here, and it is further and more directly supported by later adjudications of this court.—*Coleman v. Hatcher*, 78 Ala. 217.

This agreement with respect to the Kapahn note, in our opinion, therefore, was a valuable consideration for the conveyance. Whether it was such a consideration as could be relied on, in view of the recitals in the deed of a different consideration, is a question which the assignments of error require us to determine. The rule appears to be well settled, that a consideration, differing *in kind* from that recited in the deed—as where the recital is of a *good* consideration,

and it is proposed to show a *valuable* consideration—can not be proved.—*Houston v. Blackman*, 66 Ala. 559; *Potter v. Gracie*, 58 Ala. 307. But it is equally well settled that, under a deed reciting a money consideration, or a consideration resting in the payment of a debt, or any other valuable equivalent, it is competent to support the conveyance by parol proof of any consideration, however differing from the recital, which is valuable as distinguished from a merely good consideration, since thereby the effect and operation of the instrument is not changed, and the rule against varying or altering writings by parol testimony is not offended. Wait's Fraud. Con. § 221; *Hubbard v. Allen*, 59 Ala. 297; *Stringfellow v. Ivie*, 73 Ala. 209; *M. & M. Railway Co. v. Wilkinson*, 72 Ala. 286; *Manning v. Pippen*, 86 Ala. 357; *McKinster v. Babcock*, 26 N. Y. 378.

So much for the Kapahn indebtedness. As to the other debt which is relied on as constituting in part the consideration of the deed, it must be confessed that the evidence is exceedingly meagre. Yet we are unable to concur with appellant's counsel, that there was no testimony from which the jury could have inferred that such a liability existed, and that it was discharged by the conveyance to McDonnell. O'Donnell swears: "I owed the Kapahn note, and was to reduce the Kapahn note to under a thousand dollars, and the balance was paid for a note which he (McDonnell) held of Peter Burke." This note is referred to in the examination as the note of Burke to McDonnell, and the latter further testified that he paid "on the indorsed note the balance of $600." The jury had a right to consider this testimony, and to reconcile it with what appears further on in the examination to have been contradictory of it; or, failing in that, to elect which part of this evidence they would believe. The sum thus paid, together with the balance of the Kapahn note assumed by McDonnell, amounted to about the recited consideration; and there was some evidence that this gross sum was a fair equivalent for the property.

Without reviewing the action of the court below in giving the charge requested by the defendants, and refusing charges numbered 2, 3, 4, 14, 15, and 16 requested by the plaintiff, in detail, it will suffice to say that its ruling in each particular is justified under the view we have taken of the tendencies of the testimony, and the law applicable thereto. The exception in each instance proceeds on some theory of fact which the record does not support, or of law which we

have endeavored to demonstrate is unsound; as, for example, that there was no proof of a valuable consideration; or that the agreement of the grantee to pay the debt of the grantor, was not such a consideration; or that there was no evidence of the grantor's liability to the grantee as indorser for Burke; or that it was necessary for defendants to show that the property had been *paid for* in money, according to the first recital of the deed; or that a debt due from the grantor *to the grantee* had been paid, according to the qualifying recital of the deed; or, generally, that the defense failed, if there was a variance between the recited consideration and that which the evidence tended to establish, and this though each was a valuable consideration.

Charges 13 and 14 requested by the plaintiff were properly refused. They undertook to call the attention and invite the consideration of the jury to sundry facts and circumstances developed in evidence, tending to cast suspicion on the transaction, and which were supposed to be persuasive of fraud. Charges of this character have been, time and again, condemned by this court, as mere arguments proper to be made by counsel, but not proper to be given to the jury by the court, whose office is to instruct the triers of facts as to the law applicable to the facts, but not as to deductions and inferences to be drawn from them.—*Hussey v. State*, 86 Ala. 34; *Snider v. Burks*, 84 Ala. 59; *Birmingham Brick Works v. Allen*, 86 Ala. 185.

This disposes of all assignments of error predicated on charges given and refused, except that which relates to charge No. 12, requested by the plaintiff. That ought, in our opinion, to have been given. The case made by the recitals of the deed, and the case relied on by the defendants, and which alone their testimony tended to establish, was that of a conveyance made in consideration of the payment of an antecedent debt. The plaintiff, as we have seen, made out a *prima facie* case, and was entitled to a verdict on that showing, unless the defendants should prove certain facts. The *onus* thus cast on the defendants involved, as we have also seen, and as is settled by the authorities cited, proof to the satisfaction of the jury of two things with respect to the consideration; *first*, that it was *valuable*; and, *second*, that it was *adequate*. If they failed in either particular, they failed to rebut the *prima facie* case made by the plaintiff, and to defeat its right to a verdict. This conclusion is a necessary resultant, not only from the

language of this court in formulating the rule as to the burden of proof, but also from its well established and many times repeated doctrine, that while a creditor of a failing debtor may save himself by taking property in payment of his debt, and this regardless of the actual intent as to other creditors which may characterize the transaction, he will, in no case, be allowed to take more than is reasonably sufficient to his indemnification, and if he transcends this limitation, and takes property of the debtor worth more than the amount of his claim, he puts himself as to the entire transaction beyond the pale of the law's protection from the just demands of other creditors.—*Pritchett v. Pollock*, 82 Ala. 168; *Levy v. Williams*, 79 Ala. 171; *Knowles v. Street*, 87 Ala. 357; *Hodges v. Coleman*, 76 Ala. 103; *Leinkauff v. Frenkle*, 80 Ala. 136; *Greenhut v. Greenhut*, at present term.

The effect of the rule fixing the burden of proof as to adequacy of consideration upon the defendant in this class of cases, and prescribing the boundaries beyond which the creditor of an insolvent debtor can not go in taking property in payment of his debt, is to raise up, for all practical purposes, a presumption of the *mala fides* of the sale which purports to be in discharge of the debt; and to meet this presumption, and impress the transaction with the attributes of fair dealing and good faith, as against attacking creditors, a valuable and, at least, measurably adequate consideration, must be shown.—*Moog v. Farley*, 79 Ala. 252; *Calhoun v. Hannan*, 87 Ala. 277. If this is shown, all inquiry, as had been many times ruled by this court, into the actual intent of the parties, is foreclosed. If it is not shown, bad intent is presumed, and the question as to what purpose really actuated the parties becomes immaterial. So that it seems to be a necessary resultant from our decisions, that the inquiry into the good or bad faith of the parties as a matter of fact, and disassociated from presumptions of law, is, for all practical purposes, wholly eliminated in cases like this. Badges of fraud may doubtless be looked to, when they tend to impeach the consideration, but not as establishing a covinous intent having no connection with the character or sufficiency of the price paid.

The conclusion, to which the authorities referred to thus lead us, is, we think, supported by the logic of the situation, so to speak. If the debt thus sought to be paid is in point of fact unjust, I apprehend that the utmost good faith, the

most implicit belief in its correctness, on the part of both buyer and seller, would not validate the transaction. On the other hand, if the debt is just, but in amount only one-half or one-third the value of the property, should the purchasing creditor be allowed to thus pay himself twice or thrice over, merely because it is shown, ever so clearly, that he acted in good faith, and, owing, it may be, to some particular opinion of his as to the value of property, or of the particular property, or ignorance of its value, honestly believed he was paying an adequate price for it? In all reason, it would seem that other creditors are entitled to some protection against the ignorance or intellectual idiosyncracies of such a purchaser, and that this protection should be found in the judgment of the jury, as to whether the buyer has received greatly more than he has paid for by the satisfaction of his debt, or, what is the same thing, has satisfied a debt grossly less in amount than the value of the thing he has received. And while "the law will not weigh considerations in diamond scales," nor so closely balance the property against the price as to leave no room for the ordinary differences of opinion as to values; yet, when the jury can see that the disparity amounts to a gross inadequacy, their verdict should be against the transaction. The charge under consideration, when referred, as it must be, to the evidence, properly submitted this inquiry to the jury. It was not abstract. The disparity between the whole price and the whole property, which a part of the evidence tended to show, was as sixteen hundred is to twenty-five hundred dollars; or, if the price paid for the whole property, including that in controversy with other parcels, be apportioned to the property sued for, the difference, according to plaintiff's testimony, is as $1,300 is to $2,000. We are not prepared to affirm that this disparity is not gross, as hypothesized in the charge.

We are fully aware that the view we have taken is something of a departure from the generally received doctrine in other courts, as well as former *dicta* of this court, which are to the effect in general terms, that mere inadequacy of price, short of a disparity so gross as to shock the conscience of mankind, is only a badge of fraud, and, of itself, is not to be taken as establishing the existence of evil intent; but, in our jurisprudence, that doctrine, if any weight is to be given to our repeated enunciations on the subject, or to the reasons upon which our decisions are based, is and must be confined to sales other than in the payment of antecedent debts by

[Southern Cotton Oil Co. v. Henshaw.]

insolvent debtors drawn in question by other creditors. It would be a contradiction in terms, to say that the requirement of our adjudged cases, that the defendant claiming under such a sale must, as against a *bona fide* creditor, prove an *adequate* consideration, is met and fulfilled by proof of a grossly inadequate consideration, and it were palpable stultification to so hold.

We do not think the court below erred in admitting the declarations of O'Donnell, while in possession of the land sued for after the conveyance, explanatory of his possession, and to the effect that he held for another.—*Perry v. Graham*, 18 Ala. 822; *Johnson v. Boyles*, 26 Ala. 576; *Humes v. O'Brien*, 74 Ala. 79.

For the error pointed out above, the judgment of the Circuit Court must be reversed, and the cause remanded.