In re POLAR CHIPS INTERNATIONAL, INC., d/b/a Walter Kellin Enterprises, a/k/a The Kellin Corporation, Debtor.

SANITARY ICE VENDING CO., INC., a Florida corporation, Plaintiff,

v.

Herb HARRIS, as Chapter 11 Trustee of Polar Chips International, Inc., d/b/a Walter Kellin Enterprises a/k/a the Kellin Corporation, Defendants,

and

The Law Partnership of Zuckerman, Spaeder, Taylor & Evans, by its Partners Roger E. Zuckerman, Roger C. Spaeder, William W. Taylor, III, Peter Goldstein, and Janet M. Meiburger, Defendants-Intervenor.

Bankruptcy No. 81–00823–BKC–JAG.
Adv. No. 81–0575–BKC–JAG–A.

United States Bankruptcy Court, S. D. Florida.

Feb. 24, 1982.

27. See note 16, *supra.*

L. Joseph Hoffman, Spear & Hoffman, Coral Gables, Fla., for Sanitary Ice Vending Co.

Joel Hirschhorn, Miami, Fla., for Law Partnership of Zuckerman, Spaeder, Taylor & Evans.

C. Peter Buhler, Gunn, Venney & Buhler, Miami, Fla., for trustee.

Herb Harris, Hollywood, Fla., trustee.

Bruce Goldstein and Michael Smith, Zuckerman, Spaeder, Taylor & Kolker, Washington, D. C., and Zuckerman, Spaeder, Taylor & Evans, Miami, Fla., for defendants-intervenor.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding commenced with the filing of a complaint by Sanitary Ice Vending Co., Inc. against the trustee (C.P. No. 1) to compel payment to it of approximately $103,000 and to enjoin the trustee from paying that amount to or for the benefit of Walter or Dorothy Kellin or the law firm of Zuckerman, Spaeder, Taylor & Evans. Zuckerman, Spaeder intervened (C.P. Nos. 11 and 21). As a result of the intervention and the intervenor's motion for summary judgment, an amended complaint (C.P. Nos. 25 and 28a) and amended answers (C.P. Nos. 30 and 31) were filed.

Sanitary Ice is a creditor of the debtor in this bankruptcy, Polar Chips International, Inc., d/b/a Walter Kellin Enterprises, a/k/a The Kellin Corporation, but this adversary action was not brought by it in that capacity. By virtue of the personal guaran-

ty of Walter Kellin, principal of Polar Chips, Sanitary was also a creditor of Walter Kellin individually on the same obligation. After the Polar Chips bankruptcy petition had been filed Sanitary brought suit against Walter Kellin in a Florida state court, and obtained a stipulation for the entry of final judgment (Plaintiff's Exhibit No. 10). In attempting to satisfy that state court judgment, Sanitary brought this adversary proceeding, claiming that the trustee holds property which properly belongs to the Kellins and which may, therefore, be reached by Sanitary. In order to attribute the property to the Kellins, plaintiff alleges that a fraudulent conveyance of the Kellins' property was made to Zuckerman, Spaeder, the intervenor.

The transaction which is alleged to be a fraudulent conveyance as to the Kellins commenced with the actions of the Polar Chips' trustee in marshaling the property of the Polar Chips estate. Upon examination of the records, the trustee concluded that many assets, possibly totaling $2,000,000 in value, had been held in the names of Walter and Dorothy Kellin when they were actually property of Polar Chips and should have been titled as such. The assets consisted of gems, notes, securities and miscellaneous investments involving real and personal property. The Kellins owned no other property beyond their exempt property. The trustee was prepared to file an adversary proceeding to recover those assets from the Kellins. By this time Walter Kellin had been charged with various criminal violations arising in connection with his Polar Chips activities. Walter Kellin needed immediate cash to pay attorneys' fees, and all parties found it desirable to settle the trustee's litigation. All creditors of Polar Chips were noticed and two hearings on the proposed settlement were held in this court. These resulted in a Revised Agreement dated August 31, 1981 (Defendant-Intervenor's Exhibit C) which was approved by the court (Defendant-Intervenor's Exhibit B). By this settlement, the Kellins conveyed to the trustee all the disputed property itemized on Schedule A of the Revised Agreement. The trustee was to liquidate the property and pay one half of the first $275,000 realized, to a maximum of $137,500, to the law partnership of Zuckerman, Spaeder, as the consideration to the Kellins for settling.

Sanitary Ice did not attend either of the hearings regarding the settlement. Many other creditors did attend and participated in the negotiations and the drafting of the Revised Agreement. In this trial the only testimony on the subject was that many creditors were adamant that they would object to a settlement where any consideration was paid to the Kellins directly. The Zuckerman firm represented the Kellins in these settlement negotiations, and the amount to be paid them was reduced substantially from the original agreement which did not receive court approval.

The trustee was not able to complete liquidation as expeditiously as had been hoped for. Sanitary Ice obtained its state court judgment on September 23, 1981 and filed this proceeding on October 29, 1981, before the trustee could transfer any part of the $137,500 to the Zuckerman firm. The trustee, however, claims no interest in the money and is merely a stakeholder.

No voluntary or involuntary bankruptcy proceeding has been filed by or against the Kellins. As a practical matter, it appears that the Kellins' interest, if any, in the amount here in dispute would be the only non-exempt asset if there were a Kellin bankruptcy. Defendants assert that almost all the Kellin individual creditors are also creditors of Polar Chips, and apparently they were satisfied to obtain whatever dividend they could through the Polar Chips estate.

■ Defendant-intervenor raised as affirmative defenses the principles of *res judicata*, collateral estoppel, laches, estoppel, and the law of the case. The court concludes that each of these defenses fails because these proceedings are entirely separate and independent from the proceedings at which the settlement was approved by this court, and the parties are different. At the time the court approved the settlement, it was adjudicating rights between the trus-

tee and the Kellins; such a determination could have no binding effect on a dispute among creditors of the Kellins, or between the Kellins and their creditors, when it was not and perhaps could not properly have been raised in the prior proceedings. Similarly, even if Sanitary Ice, as a creditor of Polar Chips, had notice of the settlement hearings, its failure to participate in those hearings cannot preclude it from litigating its rights as a creditor of the Kellins.

Turning to the fraudulent conveyance issue, initially, the court finds that the Kellins' settlement with the trustee and their agreement to assign $137,500 to their attorneys as payment for services were separable legal transactions, although they occurred together. The court cannot agree that the Polar Chips settlement would not have occurred "but for" the trustee's agreement to pay the law firm. Although many of the Polar Chips creditors insisted that any consideration flowing from the trustee be paid to the attorneys and not to the Kellins directly, those creditors did not have the final say in the matter. Only the court could ultimately approve or reject the settlement and it is very conceivable that the court would have approved a settlement identical to the Revised Agreement in all respects except for the $137,500 being paid to the Kellins. Such a hypothetical settlement might well have been more favorable to the bankruptcy estate than protracted litigation. As it turned out, it was agreeable to all concerned to structure the Polar Chips settlement by having the attorneys paid rather than the Kellins so it was done in that manner, and the hypothetical settlement was never proposed to this court.

The settlement was between the trustee and the Kellins, and it being favorable to those parties it probably would have occurred apart from the particular arrangements which were made as to payment. The Kellins received the benefit of the agreement. Whatever the structure of the total transaction, the trustee-Kellin agreement vested the $137,500 in the Kellins.

As a separable matter, the attorneys agreed with the Kellins to provide legal services to them for $137,500. The trustee's agreement to pay the law firm was not consideration between the trustee and the lawyers, but was consideration from the Kellins to their lawyers. It is this agreement which is being attacked as fraudulent, and it must be viewed from the perspective of the Kellins' creditors, not the Polar Chips creditors.

The court finds that the Kellins made the agreement to have their attorneys paid the $137,500 with the intent to hinder, delay and defraud their creditors. Such intent must usually be inferred from the totality of the circumstances, and various "badges of fraud" contribute to such a conclusion, e.g., *Cleveland Trust Co. v. Foster*, 93 So.2d 112 (Fla.1957). Here the Kellins were made insolvent by the transfer. They retained only their homestead exemption assets. The transfer *was* made for valuable and adequate consideration—the services of Walter Kellin's lawyers in his legal defense. However, the nature of the consideration to the Kellins was such that it could not be attached or otherwise reached by their creditors. It was retained for the sole benefit of the Kellins. In *Jackson v. Citizens' Bank & Trust Co.*, 53 Fla. 265, 44 So. 516 (1907), a factor favoring the debtor was that all of the $4,000 received from the sale of its inventory was paid to certain of its creditors, rather than being retained by the debtor. The court, at 44 So. 526, quoted at length with approval from the case of *Rankin & Co. v. Vandiver*, 78 Ala. 562 including the following:

> It is our opinion that the payment of the money to the debtor by the appellees did not render the purchase fraudulent, in view of the fact that it was expressly agreed that it should be paid to the other bona fide creditors, and was so paid to them. There was no semblance of any locking up of the property from creditors for the use of the debtor, nor one dollar's worth of benefit or profit retained by him.

The *Jackson* case and cases cited in it dealt with the receipt of cash by the debtors. In the present case, the Kellins re-

ceived services, or the promise of services, rather than money. However, the suspicions raised by a debtor's receiving cash, as expressed in *Jackson*, are caused by the ease with which cash can be "shuffled out of sight", leading to the inference that a debtor exchanged goods for cash in order to more easily secrete the cash. Here there is no question of suspicions; the consideration received by the Kellins was not only not used for their creditors' benefit but was obviously protected from their reach. And, it is not a small sum which was applicable to current services, but a large amount to be earned by the attorneys over a period of months, yet paid "up front", making it appear more as a method of shielding these funds from the creditors.

Zuckerman, Spaeder argues that there was no effect of delay or hindrance to creditors, but rather a benefit to them (including plaintiff) in that all of the balance of the Kellin assets were made available to them through the settlement. This position again fails to distinguish between cases and creditors. The creditors of Polar Chips, including Sanitary Ice, *did* receive a benefit from the settlement between the Kellins and the trustee. But the Kellin creditors did not, since the consideration to Kellins was not made available to them.

Although the court finds that the Kellins had the intent to hinder, delay, or defraud their creditors, and they were, in fact, hindered, this does not automatically lead to a recovery against the transferee, Zuckerman, Spaeder. The law firm gave consideration, and therefore the conveyance would not be fraudulent as to them unless they knew *or should have known* of the wrongful intent of the Kellins. If the circumstances of a conveyance are such as to put an ordinarily prudent man on inquiry as to the fraudulent purpose of the debtor, and if a diligent inquiry would have discovered the fraudulent purpose, and the transferee fails to make such an inquiry, the transfer is fraudulent, *Jackson v. Citizens' Bank & Trust.* The court finds that the law firm had no actual intent to hinder the Kellin creditors and did not even think about those creditors at all in their preoccupation with working out matters in the Polar Chips bankruptcy and securing a source of payment for their legal services in the criminal matters. However, they had full knowledge of the Kellins' precarious finances, of the large amount of litigation in which the Kellins were involved, or with which they were threatened, and of all of the circumstances which made it apparent to this court that the effect of the transaction is to defraud the Kellin creditors. With such reason to know, the conveyance must be considered fraudulent as to the law firm.

The defendant-intervenor has further argued in the alternative that it has an attorneys' charging lien because of its services in preserving the fund. Plaintiff in effect conceded that the law firm would have a charging lien for the amount due them for services through completion of the revised agreement. A retainer of $20,000 had been paid to them by the Kellins. Therefore, Zuckerman, Spaeder will have a charging lien for the amount due them for their total time expended through August 31, 1981, plus costs, minus $20,000. If the parties do not stipulate to the amount of the charging lien, a hearing will be held on *Monday, March 15, 1982, at 9:30 a. m., in the United States Courthouse, Room 203C, 299 East Broward Boulevard, Fort Lauderdale, Florida,* to receive evidence of the amount due the law firm for the time expended, which is already in evidence.

A separate Final Judgment incorporating these Findings and Conclusions will be entered upon the determination of that amount.